1  Jason W. Estavillo (Bar No. 188093)
2  Ryan C. Griffith (Bar No. 286060)
   LAW OFFICES OF JASON ESTAVILLO, PC
3  1330 Broadway, Suite 1030
   Oakland, CA 94612
4  Telephone:  (510) 982-3001
   Facsimile:    (510) 982-3002

5  Attorney for Marshall S. Sanders and Lydia O. Sanders Trustee
6  of the Marshall and Lydia Sanders Trust Dated April 20, 1990

7              UNITED STATES DISTRICT COURT FOR THE

8          CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

9

10 MARSHALL S. SANDER and LYDIA O.      ) Case No.:
   SANDERS AS TRUSTEE OF THE           )
11 MARSHALL AND LYDIA SANDERS          )
   TRUST DATED APRIL 20, 1990.         ) **COMPLAINT FOR:**
12                                      )   1. Rescission under 15 U.S.C. §1635
            Plaintiff,                  )   2. Cancellation of Instruments California
13                                      )      Civil Code §3412
            vs.                         )   3. Violation of California Business and
14                                      )      Professions Code §17200, et seq.
   BANK OF AMERICA, N.A.; WELLS        )   4. Violation of California Code
15 FARGO BANK, N.A., AS TRUSTEE, ON    )      §2924(a)(6) & (f)(3)
   BEHALF OF THE HOLDERS OF THE        )   5. Violation of Cal. Civ. Code §2923.5 &
16 HARBORVIEW MORTGAGE LOAN            )      §2923.55
   TRUST MORTGAGE LOAN PASS-           )
17 THROUGH CERTIFICATES, SERIES 2007-  )
   1; NATIONAL DEFAULT SERVICING       )
18 CORPORATION; SELECT PORTFOLIO       ) Date:
   SERVICING, INC.; and DOES 1-20      ) Time:
19                                      ) Dept.:
            Defendants                  )
20                                      )
                                        ) **Trustee Sale Date: June 15, 2015**
21                                      ) **Trustee Sale Time: 12:00 P.M.**
                                        )
22 _____ )

23

24                        __INTRODUCTION__

25 1.     Plaintiffs Marshall S. Sanders and Lydia O. Sanders as Trustees of the Marshall and Lydia

26 Sanders Trust Dated April 20, 1990 (hereafter "Plaintiffs") are facing an illegal foreclosure of their

27 home on Monday, June 15, 2015.

28 ///

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                    *Complaint*

1

**PARTIES AND JURISDICTION**

2.     Plaintiffs are now and at all times mentioned herein, an individual residing in the County of Orange.  At all times relevant to this action Plaintiffs have owned real property commonly known as 1621 Kensing Lane, Santa Ana, Ca 92705 (the "Property").  Its legal description is as follows:

Real Property in the City of Santa Ana, County of Orange, State of California, described as follows:

PARCEL 1:

THAT PORTION OF BLOCK 14, IRVINES SUBDIVISION AS SHOWN ON A MAP RECORDED IN BOOK, 1 PAGE 88 OF MISCELLANEOUS MAPS, RECORDS OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF LOT 350 OF SAID BLOCK 14, SAID CORNER BEING ALSO THE INTERSECTION OF THE CENTER LINES OF LA LOMA DRIVE AND RED HILL AVENUE, AS SHOWN ON A MAP FILED IN BOOK 30, PAGE 48 OF RECORDS OF SURVEYS IN THE OFFICE OF THE RECORDER OF SAID COUNTY; THENCE ALONG SAID CENTER LINE OF LA LOMA DRIVE, SOUTH 50°13'59" EAST 516.35 FEET; THENCE NORTH 39°48'03" EAST 416.52 FEET; SOUTH 53°42'59" EAST 72.51 FEET TO THE TRUE POINT OF BEGINNING; NORTH 39°48'03" EAST 241.92 FEET TO THE SOUTHWESTERLY LINE OF LOT A OF TRACT NO. 61, AS SHOWN ON A MAP THEREOF RECORDED IN BOOK 10, PAGE 5 OF MISCELLANEOUS MAPS, RECORDS OF SAID COUNTY; THENCE ALONG SAID SOUTHWESTERLY LINE; SOUTH 50°03'00" EAST 17763 FEET TO THE MOST NORTHERLY CORNER OF THE LAND DESCRIBED IN DEED TO ELWOOD H. BEAR AND OTHERS, RECORDED MARCH 21, 2923 IN BOOK 462, PAGE 12 OF DEEDS; THENCE ALONG THE NORTHWESTERLY LINE OF THE LAND DESCRIBED IN SAID DEED, SOUTH 39°48'03" WEST 239.54 FEET TO THE MOST EASTERLY CORNER OF THE LAND DESCRIBED IN DEED TO MERTON D. BUTLER AND WIFE, RECORDED JUNE 10, 1957 IN BOOK 3935, PAGE 462 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHEASTERLY LINE OF THE LAND DESCRIBED IN SAID DEED, NORTH 53°42'59" WEST 177.96 FEET TO AN ANGLE POINT THEREIN; THENCE NORTH 39°48'03" EAST 9.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 2:

A NON-EXCLUSIVE EASEMENT FOR ROAD PURPOSES FOR INGRESS AND EGRESS TO AND FROM THE PROPERTY DESCRIBED IN PARCEL 1 SAID EASEMENT BEING 18 FEET IN WIDTH, OVER THAT CERTAIN PORTION OF BLOCK 14, IRVINES SUBDIVISIONS AS SHOWN ON A MAP RECORDED IN

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                          *Complaint*

2

BOOK 1, PAGE 88 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE RECORDER, COUNTY OF ORANGE, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF LOT 350 OF SAID ABOVE-MENTIONED BLACK 14, SAID CORNER BIEN ALSO THE INTERSECTION OF THE CENTER LIEN OF LA LOMA DRIVE AND RED HILL AVENUE; THENCE ALONG THE SOUTHEASTERLY LINE OF SAID LOT 350, NORTH 39°51'04" EAST 30.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING ALONG SAID SOUTHEASTERLY LINE OF SAID LOT 350, NORTH 39°51'04" THENCE CONTINUING ALONG SAID SOUTHEASTERLY LINE OF SAID LOT 305, NORTH 39°51'04" EAST 132.33 FEET; THENCE LEAVING SAID SOUTHEASTERLY LINE, SOUTH 87°09'15" EAST 419.85 FEET; THENCE SOUTH 53°42'59" EAST 253.00 FEET; THENCE SOUTH 36°17'01" WEST AT RIGHT ANGLES TO SAID LAST MENTIONED COURSE; 18.00 FEET; THENCE NORTH 87°09'15" WEST 405.47 FEET; THENCE PARALLEL WITH SAID SOUTHEASTERLY LINE OF LOT 350, SOUTH 39°51'04" WEST 123.33 FEET; THENCE NORTH 50°13'59" WEST 18.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 3:

A NON-EXCLUSIVE RIGHT OF WAY FOR PIPE LINES TOGETHER WITH THE RIGHT TO CONVEY WATER THROUGH THE SAME AND THE RIGHT TO USE, REPAIR, MAINTAIN AND REPLACE THE EXISTING PIPE LINE AND RIGHT OF WAY FOR THE OTHER PUBLIC UTILITY PURPOSES, IN, OVER, ALONG AND ACROSS THE FOLLOWING DESCRIBED STRIP; A PORTION OF BLOCK 14 OF IRVINES SUBDIVISION, AS SHOWN ON A MAP RECORDED IN BOOK 1, PAGE 88 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF THE TRACT OF LAND CONVEYED TO ELWOOD H. BEAR AND OTHER BY DEED RECORDED MARCH 21, 1923 IN BOOK 463, PAGE 12 OF DEEDS; THENCE NORTH 53°42' WEST ALONG THE SOUTHWESTERLY LINE OF SAID TRACT OF LAND, 189.73 FEET TO THE MOST WESTERLY CORNER OF SAID TRACT OF LAND; THENCE SOUTHWESTERLY TO THE MOST RECORDED FEBRUARY 28, 1936 IN BOOK 809, PAGE 195 OF OFFICIAL RECORDS; THENCE SOUTH 53°42 EAST ALONG THE NORTHWESTERLY LINE OF SAID TRACT OF LAND CONVEYED TO M.B. WELLINGTON AND WIFE AND THE SOUTHEASTERLY EXTENSION THEREOF, A DISTANCE OF 189.73 FEET TO THE NORTHEASTERLY CORNER OF THE TRACT OF LAND CONVEYED TO M.B. WELLINGTON AND WIFE BY DEED RECORDED AUGUST 9, 1927 IN BOOK 77, PAGE 33 OF OFFICIAL RECORDS; THENCE NORTHEASTERLY TO THE POINT OF BEGINNING.

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                        *Complaint*

3

3.     Defendant Bank of America, N.A., ("BofA"), a corporation licensed to do business in California, claims to have been a note holder, beneficiary, or servicer for investment trusts of a Note secured by the Property.  Bank of America's corporate offices are located at 100 North Tryon Street, Charlotte, North Carolina 28255.

4.     Defendant National Default Servicing Corporation (hereafter "NDS") is and was at all times material hereto a business entity purports to be the "successor trustee" with its offices located at 7720 N. 16th Street, Suite 300, Pheonix, AZ 85020.  NDS was neither the original lender nor the original trustee.

5.     Defendant Select Portfolio Servicing, Inc. (hereafter "SPS") is organized under the laws of the United States with its offices located at 3815 South West Temple, Salt Lake City, UT 84115.  SPS is the purports servicer and agent of the Lender and was not the original lender.

6.     Defendant Wells Fargo Bank, N.A., as Trustee, on Behalf of the Holders of the Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1 at C/O Select Portfolio Servicing, Inc.

7.     Plaintiffs are ignorant of the true identities and capacities of Defendants designated as Does 1-20, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted.  However, Plaintiffs allege on information and belief, that each and every Doe Defendant is in some manner responsible to the acts and conduct of the Defendants and were, and are responsible for the injuries, damages, and harm incurred by Plaintiffs.  Plaintiffs further allege on information and belief that each such designated Defendant acted, and acts as the authorized agent, representative and associate of the other Defendants in doing the things alleged herein.

///

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                          *Complaint*

4

**JURISDICTION**

8.      Jurisdiction in this Court is proper under 28 U.S.C. §1332, in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  More particularly, Plaintiffs are citizens of California and defendants are citizens of North Carolina, Arizona and California.  In addition, the amount in controversy is in excess of $1,000,000.00.

**VENUE**

9.      Venue in this judicial district Court is proper under 28 U.S.C. §§1391(b)(1) and 1391 (b)(2), in that Plaintiff's residence in this judicial district, and the real property which is the subject matter of this judicial foreclosure action is situated in this judicial district.

**INTRADISTRICT ASSIGNMENT**

10.     Assignment of this action to the Southern Division of this district is proper, in that the real property which is the subject matter of this judicial foreclosure action is situated in the County of Orange.

**JURY TRIAL DEMAND**

11.     Plaintiffs demand a jury trial on all issues.

**CLAIM FOR RELIEF**

12.     Plaintiffs bring this action against BofA, Wells Fargo, NDS and SPS and Does 1 through 20 for attempting to sell Plaintiffs' Property at a trustee's sale and deprives Plaintiffs of their residence without a lawful claim to the Property.  Plaintiffs seek to clear their title of Defendants' claims.

13.     Plaintiffs are currently facing a wrongful foreclosure of their home which they have owned since 2003.  The sale date is currently June 15, 2015 at 12:00 P.M.

        ///

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                                         *Complaint*

5

**BACKGROUND FACTS**

14.    Plaintiffs refinanced the Property on or about December 26, 2006, through a loan with Countrywide Bank, N.A. for $1,435,000.00 and have considered this their primary residence through the filing of this Complaint.

15.    Plaintiffs were and continue to be the owners of the Property under the terms of a Deed of Trust when they refinanced their property in 2006 with Countrywide (attached hereto as Exhibit "A").

16.    Plaintiffs executed an adjustable Rate Note (hereinafter "Note") (attached hereto as Exhibit "B") and Deed of Trust on December 26, 2006 (Exhibit "A").    Plaintiffs were never given an opportunity to review the loan documents, other than to quickly initial or sign the necessary pages. Plaintiffs have never received or been provided with fully executed loan documents of the ones they signed on December 26, 2006 which were taken to the title company.    Plaintiffs were never provided with the required disclosures to rescind under 15 U.S.C. 1635.

17.    Plaintiffs are named as the Borrower on the Note and on the Deed of Trust dated December 22, 2006 ("DOT").    Countrywide Bank, N.A. (hereafter "Countrywide") is identified on the Note and DOT as "Lender".

18.    BofA claims to have acquired Plaintiff's loan through Countrywide.

19.    On or about February 17, 2010, Plaintiffs sent a Letter of Rescission of the underlying loan to Countrywide Bank, N.A., Bank of America, and Wells Fargo, along with other non-interested third parties.

20.    Plaintiffs requested those parties, including BofA, to cancel the Loan and release its security interest in said property.    None of the parties responded to Plaintiffs' letter within the 20 days after receipt nor at any time.    (See Exhibit "C", attached hereto)

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                                                                    *Complaint*

6

21.     Because none of the Defendants responded to Plaintiffs rescission under 15 U.S.C. §1635(b) the ownership of the property vests in the Plaintiffs

22.     Based upon Defendants' failure to respond timely to Plaintiffs' Notice of Rescission Defendants BofA, wells Fargo and non-party Countrywide relinquished any and all rights under the Loan and therefore ceased to have any interest as the purported Lender.

23.     Plaintiffs contend the non-judicial foreclosure is illegal because Plaintiffs rescinded the loan. Plaintiffs also contend the foreclosure is illegal and void because the recorded documents that Defendants are relying upon are also void.

### A. Invalid Notice of Default

24.     On March 6, 2013, NDS caused to be recorded with the Orange County Recorder the Notice of Default (hereafter "NOD" and attached hereto as Exhibit "D").  The NOD is statutorily void for the following reasons: First, the Notice specifically states, at Par. 1: "_If_ your property is in foreclosure because you are behind in your payments…" (emphasis added). The next paragraph then states: "this amount is $341,963.57". At pg. 2, Par. 6, the Notice states: "that by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed trustee, a written Declaration of Default and Demand…". No supporting evidence of the alleged Declaration, which must be under penalty of perjury and executed by the present beneficiary, is attached to this Notice. "There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default.  However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default." (Cal. Civ. Code § 2924(e)). Plaintiffs

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 992-3001
Facsimile:  (510) 982-3002

allege that none of the Defendants were the beneficiary under the Deed of Trust and therefore the NOD is void.

25.     The NOD bears the purported signature of Julie Good, Trustee Sale Supervisor, as Trustee. The NOD did not include any "declaration" compliant with Cal. Civ. Code Section 2923.55 stating "The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Ca. Civ. Code Section 2923.55.  Thirty days have elapsed since the due diligence efforts were completed."

26.     Nor were the Plaintiffs contacted by the Lender or anyone purporting to be an agent for the Lender.

**B. Invalid Assignment**

27.     An Assignment Deed of Trust ("Assignment #1") was recorded in Orange County Recorder's Office, which was purportedly executed on November 19, 2009, by T. Sevillano as a "Assistant Secretary" of Mortgage Electronic Registration Systems, Inc., (hereafter "MERS") (See Exhibit "E" attached hereto is a true and correct copy of the November 19, 2009 Assignment).

28.     On or about December 30, 2009, Recontrust caused the Assignment to be recorded with the Orange County Recorder's Office.  The Assignment alleged that for "FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO: WELLS FARGO BANK, N.A., AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2007-1".  The Assignment was purportedly signed by "T. Sevillano", as an Assistant Secretary for MERS.  Plaintiffs allege that no such transfer ever occurred, and that T. Sevillano had no authority to sign, nor is an Officer at MERS.  That no monies were exchanged between the parties.

LAW OFFICES OF JASON W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 993-3001
Facsimile: (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                              *Complaint*

8

29.     Plaintiffs dispute the validity of Assignment and alleges that no legal transfer of any interest under the Deed of Trust or Note to Wells Fargo ever occurred, on the following grounds:

a)      On or before January 31, 2007, Plaintiffs are informed and believe that their promissory note was sold by Countrywide.

b)      The challenged foreclosure is based upon an Assignment of Deed of Trust dated November 17, 2009.   MERS, as nominee for Countrywide, purports to assigns its beneficial interests in the deed of trust to Wells Fargo.  The assignment is void and improper because MERS had no right or interest in the promissory note at any time and was acting as Nominee for Countrywide, however Countrywide sold Plaintiffs' loan no later than January 1, 2007.

c)      The Notice of Trustee's Sale is fatally defective because no valid declaration and demand for sale have been executed and delivered to the Trustee as specified in the Deed of Trust and per California non-judicial foreclosure law.

d)      Plaintiffs allege that T. Sevillano was never, in any manner whatsoever, appointed by MERS, as "Assistant Secretary" (See Cal. Civ. Code §2299 ["an agency is actual when the agent is really employed by the principal"]).   Plaintiffs allege that contrary to his statement in the Assignment, T. Sevillano did not have the requisite authority to sign on behalf of MERS, had no personal knowledge of the facts involved in the Assignment, have never seen or learned whether the mortgage Loan was actually ever assigned, had never viewed the Note securing the Deed of Trust.

e)      Even if T. Sevillano had the requisite authority to execute the assignment and personal knowledge of the facts contained in said Assignment, the Assignment is still void.  The notary's signature on the Assignment for Janet L. Koch is not her signature and instead a forgery therefore invalidates the validity of the Assignment.   Specifically, her Application's signature in the

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

Assignment is not the same as on her application.   Since, a notary is required to sign all documents in the same fashion as the applicant's signature on their application in California and failure to do so make said notarization void.

30.     Not only is the creation of this "Assignment" fraudulent and deceptive, but an unlawful **criminal violation.**  California Penal Code §115 provides, "[e]very person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded under any law of this state or of the United States, is **guilty of a felony.**" (emphasis added).  Clearly, Defendants' conduct falls squarely within the guidelines of California Penal Code §115.

31.     An Assignment Deed of Trust ("Assignment #2") was recorded in Orange County Recorder's Office, which was purportedly executed on November 28, 2011 by Paul H. Webb a "Vice President" of Wells Fargo Bank, N.A. as Trustee for Harborview Mortgage Loan Trust Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-7 (See Exhibit "F" attached hereto is a true and correct copy of the November 28, 2011 Assignment).

32.     On or about January 3, 2011, BofA caused the Assignment to be recorded with the Orange County Recorder's Office.   The Assignment alleged that for "FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP all beneficial interest under that certain Deed of Trust dated December 22, 2006, executed by MARSHALL S SANDERS , and LYDIA O SANDERS, TRUSTEES OF THE MARSHALL AND LYDIA SANDERS TRUST DATED APRIL 20, 1990 to RECONTRUST COMPANY, N.A., as Trustee; and recorded January 5, 2007, as Document No. 2007000008779, in the Official Records of the county Recorder of Orange County, CA."   The Assignment was

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:   (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                                                                        *Complaint*

10

purportedly signed by "Paul H. Webb", as a Vice President for Wells Fargo.  Plaintiffs allege that no such transfer ever occurred.

33.     Plaintiffs dispute the validity of Assignment and alleges that no legal transfer of any interest under the Deed of Trust or Note to Wells Fargo ever occurred, on the following grounds:

f)     On or before January 31, 2007, Plaintiffs are informed and believe that their promissory note was sold by Countrywide.

g)     The challenged foreclosure is based upon an Assignment of Deed of Trust dated November 28, 2011.  Wells Fargo purports to assigns its beneficial interests in the deed of trust to BofA.  The assignment is void and improper because Wells Fargo had no right or interest in the promissory note at any time.

h)     The Notice of Trustee's Sale is fatally defective because no valid declaration and demand for sale have been executed and delivered to the Trustee as specified in the Deed of Trust and per California non-judicial foreclosure law.

Not only is the creation of this "Assignment" fraudulent and deceptive, but an unlawful **criminal violation.**  California Penal Code §115 provides, "[e]very person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded under any law of this state or of the United States, is **guilty of a felony.**" (emphasis added).  Clearly, Defendants' conduct falls squarely within the guidelines of California Penal Code §115.

34.     An Assignment Deed of Trust ("Assignment #3") was recorded in Orange County Recorder's Office, which was purportedly executed on June 25, 2014 by Bill Koch "Document Control Officer for Bank of America, National Association Successor by Merger to BAC Home Loans Servicing LP, FKA Countrywide Home Loans Servicing, LP by Select Portfolio Servicing, Inc. its Attorney-in-fact (See Exhibit "G" attached hereto is a true and correct copy of the June 25, 2014 Assignment).

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                                      *Complaint*

11

35.     On or about July 9, 2014, SPS caused the Assignment to be recorded with the Orange County Recorder's Office.  The Assignment alleged that for "For Value Received, BANK OF AMERICA NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT at c/o SELECT PORTFOLIO SERVICING, INC., 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT 84115 hereby grants, assigns and transfers to WELLS FARGO BANK, N.A., AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2007-1 at C/O SELECT PORTFOLIO SERVICING, INC. 3815 SOUTHWEST TEMPLE, SALT LAKE CITY, UT 84115 all beneficial interest under that certain Deed of Trust dated 12/22/2006, in the amount of $1,435,000.00, executed by MARSHALL S SANDERS, AND LYDIA O SANDERS, TRUSTEES OF THE MARSHALL AND LYDIA SANDERS TRUST DATED APRIL 20, 1990 to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE BANK, N.A. ITS SUCCESSORS AND ASSIGNS and Recorded: 01/05/2007 as Instrument No.: 2007000008779 in Orange County State of California and all rights accrued or to accrue under said Deed of Trust."  The Assignment was purportedly signed by "Bill Koch", as a Document Control Officer for SPS. Plaintiffs allege that no such transfer ever occurred.

36.     Plaintiffs dispute the validity of Assignment and alleges that no legal transfer of any interest under the Deed of Trust or Note to Wells Fargo ever occurred, on the following grounds:

    i)      On or before January 31, 2007, Plaintiffs are informed and believe that their promissory note was sold by Countrywide.

    j)      Plaintiffs rescinded the loan in 2010;

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

k)      The challenged foreclosure is based upon an Assignment of Deed of Trust dated June 25, 2014. BofApurports to assigns its beneficial interests in the deed of trust to Wells Fargo. The assignment is void and improper because BofA had no right or interest in the promissory note at any time.

The Notice of Trustee's Sale is fatally defective because no valid declaration and demand for sale have been executed and delivered to the Trustee as specified in the Deed of Trust and per California non-judicial foreclosure law.

## FIRST CAUSE OF ACTION
## RESCISSION UNDER 15 U.S.C. §1635
### [Against Bank of America and Wells Fargo and Doe Defendants]

37.      Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

38.      On or about February 17, 2010, Plaintiffs rescinded the contract by notice of rescission contained on offer to restore to defendants all consideration that have passed from defendants to plaintiffs, on the condition that defendants restore all consideration paid by plaintiffs as prescribed by 15 U.S.C §1635.

39.      None of the Defendants responded to Plaintiffs rescission within the twenty days as required by 15 U.S.C. §1635 and as such ownership of said Property vests with the obligor(s) without obligation on his or her part to pay for it. (See 15 U.S.C. §1635(b))

## SECOND CAUSE OF ACTION
## CANCELATION OF INSTRUMENTS CAL. CIV CODE § 3412
### [Against All Defendants and Doe Defendants]

40.      Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

41.     Each of the written instruments described below in this cause of action was recorded Orange County, California.   The Property to which all of the written instruments sought to be cancelled relates is situated in Orange County.

42.     Plaintiffs are informed and believe thereon allege that the Assignment, Notice of Default, Substitution of Trustee and any subsequent Notice of Trustee Sale are void for the reasons stated herein.

43.     The written instruments sought to be cancelled in this cause of action should be cancelled and Plaintiffs are entitled to attorney's fees.   If the written instruments are not canceled Plaintiffs will be deprived of title and possession of their home, and title to their Property will be clouded.

## THIRD CAUSE OF ACTION
## VIOLATION OF BUS. AND PROF. CODE § 17200, ET SEQ.
### [Against All Defendants and Doe Defendants]

44.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

45.     Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

46.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Bus. and Prof. Code § 17200, *et seq.*

47.     Cal. Bus. and Prof. Code §17200, *et seq.*, prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

48.     Defendants have violated Cal. Penal Code §115 and §532(f)(a)(4) by filing or causing the Assignments to be filed with the Orange County Recorder in connection with Plaintiffs' Mortgage Loan transaction with knowledge that the Assignment contained deliberate misstatements and

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

misrepresentations, including, *inter alia*, that Wells Fargo or BofA have been assigned Plaintiffs' Note and Deed of Trust.

49.     Defendant facilitated, aided, and abetted the illegal, deceptive, and unlawful foreclosure proceedings.

50.     BofA and Wells Fargo have been acting in a manner to mislead Plaintiffs into believing that it has been assigned an interest in the Loan, and as such had the authority to initiate foreclosure proceedings on Plaintiffs' Property.

51.     The conduct described above by Defendants was malicious because it knew that it was not properly assigned a valid interest in the Note and Deed of Trust.  However, despite such knowledge, Defendants initiated foreclosure proceedings on Plaintiffs' Property, and engaged in other unlawful foreclosure practices.  Moreover, on information and belief, Defendants have developed a practice of recording false assignments of deeds of trust in order to initiate foreclosure proceedings on California consumers.

52.     As more fully described above, Defendants' acts and practices are unlawful.  This conduct is ongoing and continues to this date.

53.     As more fully described above, Defendants' acts and practices are likely to deceive members of the public.  This conduct is ongoing and continues to this date.

54.     As more fully described above, Defendants' acts and practices are unfair and the harm caused by their conduct outweighs any benefit that their conduct may have.  This conduct is ongoing and continues to this date.

55.     Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein, Defendants violated several laws including Cal. Bus. and Prof. Code §17200, *et seq*. and must pay restitution related to their unfair, unlawful, and deceptive business practices.

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                        *Complaint*

15

56.     Plaintiffs allege that Defendants' misconduct as alleged herein, gave them an unfair competitive advantage over their competitors.  The scheme implemented by Defendants is designed to defraud California consumers to enrich Defendants.

57.     The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiffs.

58.     As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiffs have been injured in that a cloud has been placed upon title to Plaintiffs' Property and Defendant has failed to remove this cloud from Plaintiffs' title.

59.     Plaintiffs request the Court to issue an order compelling Defendant, and any other Defendants yet unknown, claiming an interest in and to the Property to take any and all actions necessary to remove the cloud the have placed upon their title and an order enjoining such Defendants from taking such actions again in the future.

60.     As a direct and proximate result of Defendants' violations of Cal. Bus. and Prof. Code §17200, Plaintiffs have been damaged in the following ways: (1) the title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (2) they are unable to determine whether they sent their monthly mortgage payments to the right party; and (3) they have expended significant funds to cover the cost of attorneys' fees and related costs.

### FOURTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE §2924(a)(6) & (f)(3)
**[Against All Defendants and Doe Defendants]**

61.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

62.     Neither BofA nor Wells Fargo holds as beneficial interest under the Deed of Trust, as required by Cal. Civil Code §2924(a)(6).

63.     The purported Lender caused to be recorded through NDS the Notice of Default, or alternatively is relying upon the effect of the Notice of Default.

64.     The NOD fails to comply with Cal Civ. Code §2924(f)(3), which is applicable since Plaintiffs' home is a residential property containing no more than four dwellings.

### FIFTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE §§ 2923.5 & 2923.55
**[Against All Defendants and Doe Defendants]**

65.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same was fully set forth herein.

66.     On or about March 6, 2013, NDS recorded a Notice of Default and Election to See Under Deed of Trust stating that Plaintiffs were behind in their monthly payments.  It stated "by paying all your past due payments, plus permitted costs and expenses."

67.     California Civil Code §2923.55 provides that a borrower may designate an attorney to discuss options with the mortgagee, beneficiary, or authorized agent, on the borrower's behalf, to avoid foreclosure. §2923.55(a) states impart:

    (a) (1)     A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not [1] record a notice of default pursuant to §2924 until both of the following:

    (A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision [2](e), *et seq.*

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                        *Complaint*

17

68.     Contrary to the claims made in the NOD none of the Defendants nor their representatives contacted the Plaintiffs to discuss their financial condition and the impending foreclosure. Defendant did not comply with any of the requirements under §2923.5 and §2923.55

69.     California Civil Code §2923.55[13](e) states that [a] notice of default may be recorded pursuant to §2924 when a [15] mortgage servicer has **not** contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. "Due diligence" shall require and mean the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file or phone calls (or messages)...

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested, that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

70.   Defendants recorded a Notice of Default against the Property in Orange County Recorder's Office on March 6, 2013 (attached hereto as Exhibit "D") There was no declaration that is compliant with §2923.55 because Plaintiffs were never contacted by NDS or any other servicer, nor received any correspondence before the Notice of Default was recorded. .

71.   Since the contact required by §2923.5 and §2923.55 did not occur, the foreclosure was, and is in violation of these statutes.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all claims so triable as a matter of right and law.

WHEREFORE, Plaintiffs pray as follows:

1.   For an order compelling Defendants to remove any instrument, including the Assignment, Substitution of Trustee, Notice of Default, and any subsequent Notice of Trustee's Sale, which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property;

2.   For the judgment determining the rights and obligations of the parties as to the Property, the Note, the Deed of Trust, or any other matter based on contract or any of the documents prepared in relation to the Property;

3.   For the Court to issue an order restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing so during the pendency of this matter;

4.   For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiffs and returning the same to Plaintiffs with interest thereon at the statutory rate from the date

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                    *Complaint*

the funds were first received from Plaintiffs;

5.  Delivery of the Original Promissory Note;

6.  Injunctive Relief;

7.  Treble Damages;

8.  For an award of attorneys' fees and costs;

9.  For costs of suit incurred herein; and

10. For such other and further relief as the Court may deem proper.

Dated: June 11, 2015                    LAW OFFICES OF JASON W. ESTAVILLO, PC


                                        /s/
                                        _____

                                        Jason W. Estavillo
                                        Attorney for Plaintiffs

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

*Sanders v. Bank of America, N.A. et al.*                                        *Complaint*

20



RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
RESIDENTIAL DIVISION

Recording Requested By:
T. DUFFY

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   96.00
**2007000008779 02:26pm 01/05/07**
203 59 D11 31
0.00 0.00 0.00 0.00 90.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
CHRISTOPHER RIDDLE

_2569281-76_ _____   [Space Above This Line For Recording Data] _____

OSA-2569281                    0001541274731 2006
[Escrow/Closing #]                  [Doc ID #]

# DEED OF TRUST

MIN 1001337-0001902667-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

**(A) "Security Instrument"** means this document, which is dated DECEMBER 22, 2006 , together
with all Riders to this document.

**(B) "Borrower"** is
MARSHALL S SANDERS, AND LYDIA O SANDERS, TRUSTEES OF THE MARSHALL AND
LYDIA SANDERS TRUST DATED   APRIL 20, 1990

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16



-6A(CA) (0207)   CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291        Form 3005 1/01
CONV/VA

DOC ID #: 00015412747312006

Borrower's address is
1621 KENSING LANE, SANTA ANA, CA 92705-3074
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(D) "Trustee" is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated   DECEMBER 22, 2006   . The
Note states that Borrower owes Lender
ONE MILLION FOUR HUNDRED THIRTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 1,435,000.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   JANUARY 01, 2037   .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [XX] Other(s) [specify] INTER VIVOS REVOCABLE TRUST RIDER AND INTER VIVOS REVOCABLE TRUST AS BORROWER-ACKNOWLEDGMENT |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 00015412747312006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY        of        ORANGE        :

[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 502-081-13        which currently has the address of

1621 KENSING LANE, SANTA ANA        ,

[Street/City]

California 92705-3074 ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

DOC ID #: 00015412747312006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

DOC ID #: 00015412747312006

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

    Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 0001541274731 2006

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 0001541274731200b

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 0001541274731206

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: 0001541274731 2006

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 00015412747312006

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 0001541274731206

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

DOC ID #: 0001541274731206

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 0001541274731200*6

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

DOC ID #: 0001541274731Z006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: 00015412747312006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_as a Trustee_ _____ (Seal)
MARSHALL S. SANDERS, INDIVIDUALLY AND AS TRUSTEE                    -Borrower
OF THE MARSHALL S. SANDERS AND LYDIA O. SANDERS
TRUST UNDER TRUST INSTRUMENT DATED 4-20-1990 FOR
THE BENEFIT OF MARSHALL S. SANDERS AND LYDIA O. SANDERS

_Lydia O. Sanders as a Trustee_ _____ (Seal)
LYDIA O. SANDERS, INDIVIDUALLY AND AS TRUSTEE                      -Borrower
OF THE MARSHALL S. SANDERS AND LYDIA O. SANDERS
TRUST UNDER TRUST INSTRUMENT DATED 4-20-1990 FOR
THE BENEFIT OF MARSHALL S. SANDERS AND LYDIA O. SANDERS

_____ (Seal)
                                                                  -Borrower

_____ (Seal)
                                                                  -Borrower

DOC ID #: 00015412747312006

State of California
County of Orange

On Dec 26, 2006 before me, Stacey Griffin , Notary Public
personally appeared

Marshall S. Sanders and Lydia O. Sanders

_, personally known to me_
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Stacey Griffin

(Seal)

STACEY GRIFFIN
COMM. # 1701242
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Commission Expires
November 24, 2010



Prepared by: CHRISTOPHER RIDDLE

LOAN #: 154127473

# ADJUSTABLE RATE NOTE
### (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

DECEMBER 22, 2006                    SANTA ANA                    CALIFORNIA
[Date]                               [City]                        [State]

1621 KENSING LANE, SANTA ANA, CA 92705-3074
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,435,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed      115 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is Countrywide Bank, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of     7.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of     1.000 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first            day of FEBRUARY, 2007        , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates

● **PayOption ARM Note - MTA Index**
1E306-XX (12/05)(d)                        Page 1 of 5





LOAN #: 154127473

(H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO & 575/1000                     percentage point(s)   2.575 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than    9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

### 3.   PAYMENTS

#### (A)  Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first             day of each month beginning on FEBRUARY 01, 2007      . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    JANUARY 01, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 10219, Van Nuys, CA 91410-0219 or at a different place if required by the Note Holder.

#### (B)  Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $4,615.53         , unless adjusted under Section 3(F).

#### (C)  Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first              day of FEBRUARY, 2008   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

#### (D)  Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than   7.500% of my prior monthly payment. This    7.500%  limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number    1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

#### (E)  Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date

● PayOption ARM Note - MTA Index

1E386-XX (12/05)                              Page 2 of 5

LOAN #: 154127473

in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

### (F)   Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN         percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

### (G)   Required Full Payment

On the tenth         Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

### (H)   Payment Options

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i)   **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

### 4.   NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me

LOAN #: 154127473

that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond

LOAN #: 154127473

for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Trustee_

MARSHALL S. SANDERS, INDIVIDUALLY AND AS TRUSTEE                    - Borrower
OF THE MARSHALL S. SANDERS AND LYDIA O. SANDERS
TRUST UNDER TRUST INSTRUMENT DATED 4-20-1990 FOR
THE BENEFIT OF MARSHALL S. SANDERS AND LYDIA O. SANDERS

                                                                   - Borrower


                                                                   - Borrower


                                                                   - Borrower



1621 Kensing Lane
Santa Ana, CA 92705-3074

February 17, 2010

Countrywide Home Loans, Inc.
(Now known as: Bank of America)
400 Countrywide Way
**Simi Valley**, CA 93065-6298

Countrywide Bank, N.A.
1199 North Fairfax St., Ste. 500
Alexandria, VA 22314

Bank of America
Home Retention Department
475 Crosspoint Parkway
NY2-002-01-17
Getzville, NY 14068-1609

ReconTrust Company, N.A.
A Wholly-owned subsidiary of
Bank of America
1800 Tapo Canyon Rd.
CA6-914-01-94
**Simi Valley**, CA 93063-6712

ReconTrust Company, N.A.
225 West Hillcrest Drive
MSN TO-02
Thousand Oaks, CA 91360-7883

Wells Fargo
Wells Fargo Bank, N.A.,
As Trustee for Harborview Mortgage Loan,
Trust Mortgage Loan Pass-through Certificates, Series 2007-1
C/o BAC Home Loans Servicing, LP
Foreclosure Department
400 Countrywide Way, SV-35
**Simi Valley**, CA 93065-6298

MERS
Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48051-2026

1

**Re:**      **DEMAND & NOTICE OF RESCISSION**
Property: 1621 Kensing Lane, Santa Ana, CA 92705-3074
Originating Loan No. 154127473 (Countrywide)


Dear Sir(s) and or Madame(s):

This correspondence will serve to memorialize my (hereinafter, "Borrower") dispute with the above-referenced mortgage loan by, through, originated, serviced or otherwise now in the hands of your office or under your dominion and control, and as Notice of my Intent to file legal action pursuant to the California Code of Civil Procedure within 30 days from this date.

Further, this correspondence will serve as notice to rescind the above-referenced mortgage loan based on your violations of each of the following federal and state laws, including, but not limited to, the Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA"), California Unfair/Deceptive Business Practices Act, Breach of Fiduciary Duty, Breach of the Implied Covenant of Good Faith and Fair Dealing, Civil Code §1688, and others.

Please be advised that the security interest in the above-referenced property is now void per this notice and you have 20 days to return all payments made on this loan and to do your part to terminate the security interest in the home. Upon compliance with the above, I, or my representative, will be contacting you to discuss the tender of the reduced payoff amount subject to offset for all damages and costs.

## VIOLATIONS OF TRUTH IN LENDING ACT (TILA)

The purpose of TILA is "to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them." If the interest rate is not fixed, then the Truth in Lending Disclosure Statement must inform the borrower of the variable rate feature of the loan. Additionally, federal courts have held that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all."[1]

- Did not deliver good faith estimates of disclosures (preliminary TILDS) within 3 days of loan application.[2]
- Did not provide 2 copies of the completed Right to Cancel.[3]
- The Truth in Lending Disclosure was not provided.[4]

---

[1] *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980) and *Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 174 (1st Cir. 2004) (quoting *Smith v. Chapman*).
[2] 12 C.F.R. §§ 226.19(a)
[3] 12 C.F.R. §§ 226.23(b)
[4] 12 C.F.R. §§ 226.17, 226.18

2

- Hazard insurance disclosure was not provided.[5]

- "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) was not provided within 3 days of application.[6]

Each of these violations is subject to civil remedies in law and equity, in addition to the recovery of attorney's fees and costs of litigation.

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

There is no evidence to confirm that the borrower received all of the disclosures mandated by law. The transfer servicing disclosure special information booklet and affiliated business agreement disclosures do not appear to have been received by the borrower.

- Did not disclose all affiliated business arrangements.[7]
- HUD-1 was not provided at closing (or 1 day before if requested) and accurate.[8]
- Transfer servicing disclosure was not provided at or prior to closing.[9]

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE[10], BREACH OF FIDUCIARY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Here, numerous violations of the CA B&P Code have occurred.

I.  **Underwriting Standards Were Ignored; Borrower Qualification based on Value of Collateral, rather than Ability to Repay the Loan**

The purpose of an underwriter is to determine whether the borrower can qualify for a loan and if the borrower has the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, proved by

---

[5] 12 C.F.R. § 226.4(d)(2)
[6] 12 C.F.R. § 226.19(b)
[7] 24 C.F.R. § 3500.15
[8] 24 C.F.R. § 3500.8(b)
[9] 24 C.F.R. § 3500.21
[10] As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice, and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1(commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code: Violations of specific code sections 10240-10248.3; 10241.

getting pay stubs, 1040s, W-2's, and a Verification of Employment and Income on the borrowers.

If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed and a proper determination of risk should have been made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.

If the underwriter had performed his/her duties accordingly, he/she would have declined this loan due to the inability of the borrower to pay. Further the loan was a stated income loan and was apparently underwritten with an automated underwriting system which is merely intended to be a guide or a preliminary approval system. The underwriter failed to properly examine this loan, and as a result, borrower has been seriously damaged.

## II.  **Predatory Lending**

The office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in unfair and deceptive business practices. Some of those characteristics here include:

- Borrower was a minority, and/or elderly or disabled, and/or the transaction was conducted in a foreign language or otherwise incapable of being understood.[11]
- Other unfair, deceptive, or fraudulent practices in transaction.
- Mortgage broker and corresponding lender involved.

## III.  **Breach of Fiduciary Duty**

Both lender and broker have a fiduciary responsibility to the borrower. The fiduciary duty of the broker (i.e. duty of trust) is to deal with the consumer in good faith. If the broker knew or should have known that the borrower will or has a likelihood of defaulting on this loan, he/she had a fiduciary duty to the borrower to not place them in that loan (in harm's way).

The fiduciary duty of the broker, as agent for the lender, is the same—to deal with the consumer in good faith, educate the borrowers about loan programs, and other options available to the borrowers, perform their own due diligence to determine if the borrowers are being placed in a loan that is legal, properly disclosed, is the best loan for the borrower given their financial circumstance, and is affordable over the life of the loan.

Here, the Borrower was placed into the current loan product without regard for the ability to repay, likely they would default or incur bankruptcy as a result of the loan, and it was reasonably foreseeable that such would occur.

---

[11] California Civil Code § 1632

4

In addition, the above-described acts were a violation of the implied covenant of good faith and fair dealing.

## VIOLATION OF CALIFORNIA CIVIL CODE

The California Civil Code has certain provisions that are intended to protect borrowers when attempting to procure a loan from a financial institution or lender:

First, the law requires certain procedural safeguards to protect the borrower such as receipt of specific disclosure notices from the lender. Civil Code §§ 1916.5 and 1916.7. An applicant for a loan pursuant to the provisions of this section must be given a disclosure notice in the following form:

> *"NOTICE TO BORROWER, IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE-RATE LOAN. PLEASE READ CAREFULLY..."*

This disclosure <u>was not provided</u> to the borrower at any time during the processing of the loan, nor was <u>any alternative loan product</u> offered to the borrowers.

Also, the lender must notify borrowers of any changes in the interest rate and monthly payment on a loan. The fully amortized rate changes monthly, so the borrower should be notified monthly, in accordance with the above statute. Lender has failed to do so and thus violated the law.

Additional violations of Civil Code §§ 1920-1921 have occurred: adjustment of rate did not take into consideration the ability of borrower to repay; change in rate was not reflected in security instrument; borrower was not provided notice of change of rate monthly; there was a prepayment penalty in the note; borrower was not adequately advised of negative amortization.

These Civil Code violations carry with them damages, attorney's fees, costs of suit, and other legal and equitable relief.

## SECURITIZATION & MERS & QUALIFIED WRITTEN REQUESTS

Mortgage Electronic Registration Systems (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignments of mortgages, with the idea that MERS would be the mortgagee of record. This would allow "MERS" to foreclose on the property, and at the same time, assist the lenders in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved the lenders money in manpower and the costs of recording these Assignments. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

5

MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS' "assigned officer" has a conflict of interest.

Since neither MERS nor the servicer has a beneficial interest in the Note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the assignment in the name of MERS, the assignment executed by the MERS employee is illegal. The actual owner of the Note has not executed the assignment to the new party. An assignment of a mortgage in the absence of the assignment and physical delivery of the Note will result in a nullity.

It must also be noted that the lender or other holder of the Note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage Note, nor do they acquire any beneficial interest in the Note.

The existence of MERS constitutes numerous violations of the California Business and Professions Code, as well as Unfair and Deceptive Acts and Practices, due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices was intentionally designed to mislead the borrower and benefit the lenders.

To the extent that this loan has been sold, transferred or assigned, this letter shall also serve as a Qualified Written Request ("QWR") pursuant to RESPA (12 USC § 2600 et seq.), for the following information:

1.      All documents which relate to the original loan transaction which is the subject of this request (hereinafter, "the transaction"), including but not limited to, loan application(s), good faith estimate(s), loan commitment letter(s), Truth in Lending Disclosure Statement(s), Notice(s) of Right to Cancel, HUD-1 or final settlement statement(s), promissory note or notes/agreement(s), mortgage(s)/deed(s) of trust.

2.      All purchase and sale of mortgage agreements, sale or transfer of servicing rights or other similar agreement related to any assignment, purchase or sale of the mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government-sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to the mortgage, promissory note and deed of trust from the inception of the loan through the present date.

3.      All assignments, transfers, or other documents evidencing a transfer, sale or assignment of the mortgage, deed of trust, promissory note or other document that secures payment by me to the obligation in this account from the inception of the loan to the present date.

4.      All deeds in lieu, modifications to the mortgage, promissory note or deed of trust from the inception of the loan to the present date.

5.    Each and every canceled check, money order, draft, debit or credit notice, issued to any servicer of the account for payment of any monthly payment, other payment, escrow charge, fee or expense on the account.

6.    All escrow analyses conducted on the account from the inception of the loan to the date of this letter.

7.    Each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on the disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney's fees, points, etc.

8.    Copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by borrower(s) or by others on the account.

9.    All letters, statements and documents sent to borrower(s) by your company.

10.   All letters, statements and documents sent to borrower(s) by agents, attorneys or representatives of your company.

11.   All letters, statements and documents sent to borrower(s) by previous servicers, sub-servicers or others in your loan file or in your control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

12.   All letters, statements and documents contained in the loan file or imaged by you, any servicer or sub-servicers of the mortgage from inception of the loan to the present date.

13.   All electronic transfers, assignments, sales of the Note, mortgage, deed of trust or other security instrument.

14.   All agreements, contracts and understandings with vendors that have been paid for by any charge to the account of borrower(s) from the inception of the loan to the present date.

15.   All agreements, contracts and understandings between you and the loan originator for this transaction.

16.   All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers and documents that relate to the accounting of the loan from inception to the present date.

17.   All loan servicing transaction records, ledgers, registers and similar items detailing how the loan has been serviced from loan inception to the present date.

18.   All loan servicing agreements between the servicer(s) and the loan holder, lender, and/or trustees.

19.   Copies of all sales contracts, servicing agreements, assignments, transfers, indemnification agreements, recourse agreements, mortgage insurance contracts and any agreement related to the loan from its inception through actual receipt of this communication; assumed to be three business days ahead of the date written above.

Further, please provide, in writing, the answers to the questions listed below.

1)   Please identify the name, address and telephone number of the current holder (or owner) of the Note.

2)   Please identify the name, address and telephone number of the current holder (or owner) of the mortgage (or deed of trust).

3)   Identify the name, address and telephone number of the mortgage broker involved in the transaction.

4)   Identify any and all fees or any "things of value" provided to mortgage broker in the transaction.

5)   Identify specifically how the "Annual Percentage Rate" and "Amount Financed" were calculated in connection with this loan.

6)   Please identify where the originals of the entire loan file are currently located and how they are being stored, kept and protected/safeguarded.

7)   Where is the "original" promissory note or mortgage located? Please describe its physical location and anyone holding this Note as a custodian or trustee, if applicable.

8)   Where is the "original" deed of trust located? Please describe its physical location and anyone holding this deed of trust as a custodian or trustee, if applicable.

9)   Has the mortgage loan been made a part of any mortgage pool since the inception of the loan? If yes, please identify each and every loan mortgage pool that the mortgage has been a part of from the inception of the mortgage to the present date.

10)   Have there been any "investors" who have participated in any mortgage-backed security (MBS), collateral mortgage obligation (CMO) or other mortgage security instrument that the mortgage loan has ever been a part of from the inception of the

mortgage loan to the present date? If yes, please identify the name and address of each and every individual, entity, organization or company.

11)   Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, transfers, indemnification agreements, mortgage insurance contracts, recourse agreements and any agreement related to the loan from its inception to the current date written above.

**Borrower hereby demands:**

- That, pursuant to the above regulations, lender shall rescind the loan made by defendants to secure the property and all security instruments in connection with those loans; and that all costs to acquire those loans plus all interest paid shall be refunded to borrower.

- That defendants will re-secure the property with a new loan at an amount equal to today's current market value, and with the terms that were originally disclosed, but at a payment not to exceed 28-31% of borrower's income as should have been done in the first place.

- That lender reimburse plaintiffs for all costs to resolve this matter, including but not limited to attorney's fees, investigation fees, audit(s) performed by third parties, expert witness consultations, and out-of-pocket costs and expenses, including travel and lodging expenses to meet and confer with mortgage and banking personnel and government regulatory officials and politicians to determine the breadth and scope of the injuries inflicted upon borrower in the perversion of the loan process.

- That lender pays damages in the amount of $100,000,000,000,000.00 to restore the class/borrower and any and all collateral foreclosed, plus treble damages.

- That lender pays damages in the amount of $100,000,000,000,000.00 to class/borrower for stress, harassment, threats, trespass, conversion, false imprisonment, intentional and negligent infliction of emotional distress, false credit reporting, and negative and detrimental libel and slander of borrower's character, plus trebled damages .

- That, pursuant to the requests above, a statutorily timely response to the request for documents and information is provided.

Demand is herewith made that all efforts at sale, eviction or foreclosure be stopped immediately as the property is scheduled for eviction or sale.

Furthermore, and in accordance with the Fair Credit Reporting Act, while this matter is in dispute, the lender must not report any negative information on this account

to any reporting agency and/or credit bureau(s), and that with resolution of this matter, the lender will report the account "paid as agreed" and will remove any derogatory information from their credit report, to include any foreclosure filings and other references to foreclosure.

If this does not immediately comport with your full understanding of this matter or you do not agree with this demand, you should so notify me [or my representative(s)] immediately via the most expedient means at your disposal directed to me at the collateral address noted at the beginning of this communication, in writing.

You have twenty (20) days from receipt of this letter to comply with these demands. Please govern yourselves accordingly; bearing in mind as paramount that time is of the essence.

We look forward to your timely compliance.

Most respectfully yours,

Marshall Sanders



Branch :OC3   User :3023

Recorded in Official Records, Orange County
Renee Ramirez, Assistant Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||||||  12.00
* $ R 0 0 0 5 6 5 5 6 3 2 $ *
2013000138230 12:51 pm 03/06/13
117 406 N15 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

**RECORDING REQUESTED BY:**

**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No.: 12-20866-SP-CA
Title Order No.: 120353682-CA-MAI

APN: 502-081-13

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

**This amount is $341,963.57, as of 03/05/2013 and will increase until your account becomes current.**

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required by the Note and Deed of Trust or Mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by the transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**[Page 1 of 2]**

Branch :OC3   User :3023

NDSC File No.:  12-20866-SP-CA

Select Portfolio Servicing, Inc.
c/o National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020    Phone 602-264-6101   Sales Website: www.ndscorp.com/sales/

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

NOTICE IS HEREBY GIVEN THAT : NATIONAL DEFAULT SERVICING CORPORATION is either the original Trustee, the duly appointed substituted Trustee or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 12/22/2006, executed by MARSHALL S SANDERS, AND LYDIA O SANDERS, TRUSTEES OF THE MARSHALL AND LYDIA SANDERS TRUST DATED APRIL 20, 1990, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, N.A., ITS SUCCESSORS AND ASSIGNS as beneficiary recorded 01/05/2007 as Instrument No. 2007000008779 (or Book, Page)  of the Official Records of ORANGE County, CA.  Said obligations including ONE NOTE FOR THE ORIGINAL sum of $1,435,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON 04/01/2009 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEY'S FEES.

That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.55 declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.55.

Dated  :      March 5, 2013
National Default Servicing Corporation, as Trustee for Select Portfolio Servicing, Inc.

By: Julie Good, Trustee Sale Supervisor

[Page 2 of 2]



Branch :OC3   User :3023

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

**9.00**

**2009000698145 08:00am 12/30/09**
106 402 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

TS No. 09-0171268

09-8-533 008

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**WELLS FARGO BANK, N.A., AS TRUSTEE FOR HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE
LOAN PASS-THROUGH CERTIFICATES, SERIES 2007-1**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 12/22/2006, EXECUTED BY:
MARSHALL S SANDERS, AND LYDIA O SANDERS, TRUSTEES OF THE MARSHALL AND LYDIA SANDERS
TRUST DATED APRIL 20,1990, TRUSTOR: TO RECONTRUST COMPANY, N.A. TRUSTEE AND RECORDED AS
INSTRUMENT NO. 2007000008779 ON 01/05/2007, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S
OFFICE OF ORANGE  COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED: 11/24/09

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

State of:   CALIFORNIA                    )
County of:   VENTURA                      )      BY: _____
                                                      T.Sevillano    Assistant Secretary
On  NOV 1 9 2009  before me, _____  JANET L. KOCH  _____ notary public, personally appeared
                T.Sevillano                                  , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____  (Seal)
          **JANET L. KOCH**

JANET L. KOCH
Commission # 1776832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011

*Form asgnmnt (01/09)*

ORANGE, CA  Document:AS 2009.698145                                    Page:1 of 1

Printed on:12/9/2013 3:00 PM



RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

Bank of America, N.A.
400 National Way
Simi Valley, CA 93065          65 05230

File No. 7021.303325

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

                                    9.00

2011000620147 09:37am 12/06/11
105 406 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

**IMPORTANT NOTICE**
Note:  After having been recorded, this Assignment should be kept with the Note and Deed of Trust hereby assigned

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP all beneficial interest under that certain Deed of Trust dated December 22, 2006, executed by MARSHALL S SANDERS, and LYDIA O SANDERS, TRUSTEES OF THE MARSHALL AND LYDIA SANDERS TRUST DATED APRIL 20, 1990 to RECONTRUST COMPANY, N.A., as Trustee; and recorded January 5, 2007, as Document No. 2007000008779, in the Official Records of the County Recorder of Orange County, CA.

TOGETHER with the rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part the real property described therein.

Dated:  **NOV 2 8 2011**

Wells Fargo Bank, N.A., as Trustee for Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1

Paul H. Webb
Assistant Vice President

**ACKNOWLEDGMENT**
State of        California
County of        Ventura           )

On   **NOV 2 8 2011**        before me, _Milvia L Lopez, Notary Public_
                                              (Insert name and title of the officer)

Personally appeared   **Paul H. Webb** _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____California_____ that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _Milvia L Lopez_ (Seal)

MILVIA L. LOPEZ
COMM. # 1946737
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. SEP. 1, 2015



Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

12.00

*$ R 0 0 0 6 8 1 8 7 7 5 $*

2014000273238 2:09 pm 07/09/14

217 402 A32 F13    2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording Requested By:
~~SELECT PORTFOLIO SERVICING, INC.~~
**FIRST AMERICAN TITLE**
When Recorded Return To:
BILL KOCH
SELECT PORTFOLIO SERVICING, INC.
3815 SOUTH WEST TEMPLE
SALT LAKE CITY, UT  84115

*CA-14-98579*

*8456289*

### CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California   REFERENCE #: 496424000   "SANDERS"
INVESTOR #: U62

For Value Received, BANK OF AMERICA NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT at c/o SELECT PORTFOLIO SERVICING, INC., 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT  84115  hereby grants, assigns and transfers to WELLS FARGO BANK, N.A., AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2007-1  at C/O SELECT PORTFOLIO SERVICING, INC. 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT  84115 all beneficial interest under that certain Deed of Trust dated 12/22/2006 , in the amount of $1,435,000.00, executed by MARSHALL S SANDERS, AND LYDIA O SANDERS, TRUSTEES OF THE MARSHALL AND LYDIA SANDERS TRUST DATED APRIL 20, 1990 to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE BANK, N.A. ITS SUCCESSORS AND ASSIGNS  and Recorded:  01/05/2007  as Instrument No.: 2007000008779 in Orange County , State of California and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

BANK OF AMERICA NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT
On  JUN 2 5 2014



_____
BILL KOCH, DOCUMENT CONTROL OFFICER

First American Title Insurance Company
submits this document for recordation
as a courtesy, for physical convenience only.
First American Title Insurance Company has
not examined this document for its validity,
sufficiency, or effect, if any, upon title to the
real property described herein

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF UTAH
COUNTY OF SALT LAKE

On ___JUN 2 5 2014___, before me, KYLE J STERNER, a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared BILL KOCH, DOCUMENT CONTROL OFFICER,  BANK OF AMERICA NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

KYLE J STERNER
Notary Expires: 09/24/2016  #659205

KYLE J. STERNER
Notary Public State of Utah
My Commission Expires on:
September 24, 2016
Comm. Number: 659205

(This area for notarial seal)