1  Jason W. Estavillo (Bar No. 188093)
2  Ryan C. Griffith (Bar No. 286060)
   LAW OFFICES OF JASON ESTAVILLO, PC
3  1330 Broadway, Suite 1030
   Oakland, CA 94612
4  Telephone:  (510) 982-3001
   Facsimile:    (510) 982-3002
5
6  Attorney for Marshall S. Sanders and Lydia O. Sanders Trustee
   of the Marshall and Lydia Sanders Trust Dated April 20, 1990
7
8              UNITED STATES DISTRICT COURT FOR THE
9          CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DISTRICT
10

| | |
|---|---|
| 11  MARSHALL S. SANDER and LYDIA O. SANDERS AS TRUSTEE OF THE MARSHALL AND LYDIA SANDERS TRUST DATED APRIL 20, 1990. | ) ) ) ) | Case No.: |

11  MARSHALL S. SANDER and LYDIA O.    ) Case No.:
    SANDERS AS TRUSTEE OF THE        )
12  MARSHALL AND LYDIA SANDERS       ) **NOTICE AND MEMORANDUM OF**
    TRUST DATED APRIL 20, 1990.      ) **POINTS AND AUTHORITIES IN**
13                                   ) **SUPPORT OF EX PARTE APPLICATION**
              Plaintiff,            ) **AND MOTION FOR TEMPORARY**
14                                   ) **RESTRAINING ORDER TO CANCEL**
         vs.                         ) **AND ENJOIN TRUSTEE'S SALE**
15                                   ) **SCHEDULED FOR JUNE 15, 2015 AND**
    BANK OF AMERICA, N.A.; WELLS     ) **FOR PRELIMINARY INJUNCTION**
16  FARGO BANK, N.A., AS TRUSTEE, ON )
    BEHALF OF THE HOLDERS OF THE     )
17  HARBORVIEW MORTGAGE LOAN         ) Date:
    TRUST MORTGAGE LOAN PASS-        ) Time:
18  THROUGH CERTIFICATES, SERIES 2007- ) Courtroom:
    1; NATIONAL DEFAULT SERVICING    )
19  CORPORATION; SELECT PORTFOLIO    )
    SERVICING, INC.; and DOES 1-20   )
20                                   ) **Trustee Sale Date: June 15, 2015**
              Defendants            ) **Trustee Sale Time: 12:00 PM**
21                                   )
                                     )
22                                   )
                                     )
23  _____ )

24
25  NOTICE IS HEREBY GIVEN THAT on June 12, 2015 or as soon thereafter as the matter may be
26  heard in a Department of the above-entitled Court located at 411 West Fourth Street, Room 1053,
27  Santa Ana, CA 92701-4516, the Plaintiffs, Marshall Sanders and Lydia O. Sanders of the Marshall
28  and Lydia Sanders Trust dated April 20, 1990 (hereafter "Plaintiffs") through their undersigned

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

1

counsel, move this Court to enter a Temporary Restraining Order cancelling and enjoining a Trustee's Sale presently scheduled for June 15, 2015 and for a preliminary injunction precluding any foreclosure activity pending the full disposition of this action on the merits on the grounds that:

1.     Plaintiffs have sued Bank of America, National Association, (hereafter "Bank of America"), Wells Fargo Bank, N.A. as Trustee on Behalf of the Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1 (hereafter "Wells Fargo", National Default Servicing Corporation, (hereafter "NDS"), Select Portfolio Servicing, Inc. (hereafter "SPS"); and Does 1-20 for numerous causes of action including violation of the Homeowners Bill of Rights and to cancel and enjoin a Trustee's (foreclosure) sale of the Plaintiffs' primary residence currently scheduled for June 15, 2015 at 12:00 P.M. based on rescission under 15 U.S.C. 1635

2.     The factual allegations of the Complaint not specifically reiterated herein are incorporated herein by reference.

3.     Defendants have threatened an unlawful foreclosure sale of Plaintiffs' primary residence.

4.     Plaintiffs have been threatened with foreclosure of their unique Property by the Defendants.

5.     Federal Rule of Civil Procedure §65 allows this court to issue a temporary restraining order if a verified complaint shows that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. The Trustee's sale of Plaintiffs' property will result in immediate and irreparable injury and Plaintiffs' counsel has attempted to provide notice to the adverse party.

///

///

///

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

2

DATED: June 8, 2015

LAW OFFICE OF JASON W. ESTAVILLO, PC

/s/

Jason W. Estavillo
Attorney for Plaintiffs

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

1.     Plaintiffs seek a Temporary Restraining Order under Federal Rule of Civil Procedure § 65 to bar the Trustee's sale of the Plaintiffs' property because none of the Defendants have any demonstrable legal or beneficial interest in the Plaintiffs' Deed of Trust or Promissory Note. The Plaintiff also seek to halt the foreclosure sale of their residence, because the non-judicial requirements under the California Homeowner Bill of Rights ("HBOR") have not been complied with by any of the Defendants.

2.     The Homeowner's Bill of Rights ("HBOR") became effective as of January 1, 2013, and it creates a private right of action for borrowers, who may now enjoin a pending trustee's sale or recording of the trustee's deed if the mortgage servicer violates the laws requirements[1].

3.     The injunctive relief remains in place until the mortgage servicer corrects the violation[2].

4.     If a trustee's sale is completed in violation of the law's requirements, a borrower may recover actual damages or in the case of willful intentional, or reckless violations, the greater of treble or actual damages of $50,000.00[3].

5.     Finally, Plaintiffs rescinded their loan on February 17, 2010 under 15 U.S.C. §1635 and none of the Defendants responded to said rescission.

## INTRODUCTION

6.     The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Le v. 1st Nat. Lending Services*, No. 13-cv-01344-LHK, 2013 WL255556, at

---

[1] The private right of action is limited to enforcement of §§2923.5, 2923.55 (notice requirements), 2923.6 (dual-tracking), 2923.7 (single point of contact), 2924.9 (post-notice of default notice requirements), 2924.10 (acknowledgment of receipt), 2924.11 (dual tracking, and 2924.17 (verification of documents). Homeowner Bill of Rights (to be codified at Cal. Civ. Code §2924.12(a)(1)). Other provisions of the law still may be enforced through California's Unfair Competition Law, which allows aggrieved parties to sue for restitution and injunctive relief, in addition to any existing remedies. Cal. Bus. & Prof. Code §17200 (2012).
[2] "Homeowner Bill of Rights (to be codified at Cal. Civ. Code §2924.12(a)(1)).
[3] Id. (to be codified at Cal. Civ. Code §2924.12(a)(2)).

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

4

*1 (N.D. Cal. June 7, 2013). A court may issue a temporary restraining order or a preliminary injunction to preserve the positions of the parties until a full trial can be conducted. Fed. R. Civ. Proc. 65; *LGS Architects, Inc. cc. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006). In analyzing whether to grant a preliminary injunction, courts consider a four-factor test: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff is likely to suffer irreparable harm in the absence of injunctive relief; (3) whether the balance of equities tips in the plaintiff's favor; and (4) whether an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S 7, 20 (2008).

7.     The four *Winter* elements are evaluated on a sliding scale so that each element is balanced, and a stronger showing on some elements may offset a weaker showing on other elements. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Accordingly, a court may grant a preliminary injunction even when it cannot determine with certainty that the plaintiff will likely prevail on the merits. *Id.* At 1134-35.   Indeed, where a plaintiff demonstrates the likelihood of irreparable harm, that the balance of hardships is tipped sharply in the plaintiff's favor, and that the public interest favors injunctive relief, that plaintiff need only demonstrate that it raised "serious questions" going to the merits of the claims to be entitled to injunctive relief. *Id.*

8.     Applying the *Winters* elements to this case it is clear injunctive relief must be granted. (1) Plaintiffs have a strong likelihood of success on the merits. Plaintiffs are alleging that there original lender Defendants and non-party Countrywide Plaintiffs' original lender engaged in fraudulent and unlawful business practices including the unlawful recording of instruments and violating the Homeowner's Bill of Rights (hereafter "HBOR).   HBOR was enacted to prevent unlawful foreclosures such as the one Plaintiffs' are facing. It is also worth noting that Plaintiffs original lender, Countrywide, is an entity that was so embroiled in unlawful activity that it was forced to reach

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:   (510) 982-3002

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

settlements with the California Department of Justice, Federal Trade Commission, U.S. Department of Justice and the Security Exchange Commission. Additionally, due to the extensive abuses in the mortgage industry numerous lawsuits have emerged and the California Supreme Court is currently reviewing the matter of unlawful foreclosure and invalid assignments in *Yvanova v. New Century Mortgage Corporation* Case No. S218973. The outcome of this case will have a major impact on Plaintiffs' case and based on the above there is a strong likelihood on the merits. (2) If the Trustee's sale goes through Plaintiffs will lose their unique residential home, which will result in irreparable harm. (3) The balance of equities tips in Plaintiffs' favor, because Plaintiffs appear to have been one of the countless victims of the fast and loose practices of the mortgage industry. (4) Injunctive relief is in the public interest, because foreclosure results in vacant homes, reduced property values, increased crime and will leave Plaintiffs without a home.

9.     The sliding scale factor also tips heavily in Plaintiffs favor. Plaintiffs are residing in their primary residence, but the loss of their home and their subsequent removal will result in irreparable harm. Conversely, defendants will suffer nominal to no harm if the Trustee's Sale is delayed. If this foreclosure turns out to be lawful they will obtain money from the sale of the property. All the *Winters* factors and the balance of harms tips heavily in Plaintiffs' favor, therefore Injunctive relief should be granted.

**I.     THE COURT SHOULD ENJOIN THE NON-JUDICIAL SALE OF PLAINTIFFS' HOME BECAUSE THE AMOUNT LISTED IN THE NOTICE OF DEFAULT IS UNCERTAIN AND IN DISPUTE.**

10.     For more than a century, it has been established California law that a foreclosure sale ought not to be made when the debt is uncertain or in dispute. *See More v. Calkins*, 85 Cal. 177, 188 (1890). "Given the drastic implications of a foreclosure, it is not surprising to find courts quite frequently granting preliminary injunctions to forestall this remedy while the court considers a case testing whether it is justified under the facts and law." *Baypoint Mortgage Corp. v. Crest Premium Real*

LAW OFFICES OF JASON W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

*Estate etc. Trust*, 168 Cal. App. 3d 818, 829-30 (1985).  *See also Stockton v. Newman*, 148 Cal. App. 2d 558, 559-60 (1957) (affirming preliminary injunction; "[I]f [defendants] proceed with the sale under deed of trust, [plaintiff] will be deprived of this particular piece of property and such damage may be considered irreparable for in equity each parcel of real property is considered unique.").

11.     Misunderstandings between the parties are common in complex loan transactions, and a trustor's failure to make a payment demanded by the beneficiary is not necessarily a breach of the obligations. *See, e.g., Hauger v. Gates*, 42 Cal. 2d 752 (1954) default excused as offset against beneficiary); *Strike v. Trans-West Discount Corp.*, 92 Cal. App. 3d 735 (1975) (vacating notice of default that was based on usurious claim). "[T]he notice of default will be strictly construed and must correctly set forth the amounts required to cure the default." *Sweatt v. Foreclosure Co.*, 166 Cal. App. 3d 273, 278 (1985). Furthermore, a defect in the notice, such as a misstatement of the amount in default, will void any sale, and the trustee may refuse to convey the trustee's deed. *Angell v. Superior Ct.*, 73 Cal.App.4th 691, 699 (1999).

12.     Plaintiffs' likelihood of prevailing at trial is substantial.  These are not mere technicalities of "crossing I's and dotting t's." These are substantive legal rights that Plaintiffs have the right to exercise in a court of law.  Without an immediate halt the foreclosure, Plaintiffs will lose their home – a loss which is irreparable and cannot be adequately compensated for by money.

13.     Accordingly, Plaintiffs respectfully request that this Court should issue an order enjoining Defendants from foreclosing on their home in any manner until the Court can determine whether, and to what extent, any monies are still owed to Defendants.

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

## II.   CIVIL CODE SECTION 2923.55 AFFORDS A BORROWER PROTECTIONS FROM CONFUSION AS TO THE OWNERSHIP OF THEIR LOAN ALONG WITH THE PROCEDURE OF HOW ONE PROCEEDS WITH A FORECLOSURE OF REAL PROPERTY

14.   California foreclosure law requires that the trustee, the beneficiary or their authorized agent follow certain procedures in order to enforce a power of sale clause in a deed of trust. *See* Cal. Civ. Code §2924(a)(6) states: "the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest.  No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest".  A foreclosing party must strictly comply with the statutory requirements, otherwise the sale is invalid.

15.   The Notice of Default at issue in this case is subject to the authority of California Government Code §27201, the Recording Statute.  The statute is clear in its characterization of instruments and the requirements necessary for filing instruments.  The mere recordation of an instrument does not impart any presumption of its legal sufficiency.  While any instrument filed may be in proper in form, its legal sufficiency is determined by evidence.  Further, the instrument must be acknowledged as to the recitals contained therein. See: Cal. Gov't. Code §§§§§ 27201, 27282, 27286, 27287, 27288, 27289.

16.   The Notice of Default ("NOD") herein lacks any evidence to support the recitals contained therein, specifically, that "That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:   (510) 982-3002

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

sums secured thereby immediately due and payable and has ejected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby." (See Exhibit "A", attached hereto). The declaration of default attached to the instrument, is void under Cal. Civ. Code §2923.5. There is not a statement by the executor of the instrument that he/she has personal, first-hand knowledge of the facts alleged in the instrument. There is also an allegation of an amount as past due, yet no evidence of the source of the allegation, the date or time the allegation was made, or by whom, is attached. The instrument is wholly un-supported and is subject to the hearsay rule.

17.     Plaintiffs herein deny the existence of the default as described in the NOD (See Supporting Declarations of Marshall & Lydia Sanders, ¶7). Because the instrument violates both the statute and the Deed of Trust on its face, it is not a "privileged communication" under Cal. Civil Code §2924, it is an un-privileged, un-qualified document executed with malice and if left outstanding would cause further irreparable damage to Plaintiffs. The instrument prejudices Plaintiffs' rights both under contract and under the statutes at California Civil Code §2924 *et. seq.*, and California Government Code §27201 *et. seq.* also see: Cal. Civil Code §§2924(a)(1)(D) and 2924(e) wherein it is clear that only a default "actually known to the beneficiary" is within the scope of the NOD. No evidence of such knowledge is attached to the instrument.

18.     Plaintiffs contend that none of the Defendants or their agents complied with Cal. Civ. Code §2923.5(g)

19.     Plaintiffs allege that no such declaration has been made by the Beneficiary, or its officers. Without such requisite evidence or acknowledgement, the instrument is void and represents a cloud against the interests of Plaintiffs. Plaintiffs will show evidence that the NOD contains false statements known to be false at the time of execution and is, therefore, a False Instrument as defined by the Cal. Penal Code §115.5.

LAW OFFICES OF JASON W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

20.    A deed of trust can only be foreclosed by the owner of the note, as a matter of law.   See *Santerns v. Los Angeles Fin. Co.*, (1949) 91 Cal.App.2d 197, 201-202 (resolving who had a superior interest in the property at issue-a judgment creditor who executed or the owner of the note and deed of trust and deciding in favor of the owner of the note and deed of trust because he acquired his rights before the judgment creditor).   See also *Cockerell v. Title Ins. & Trust Co.*, (1954) 42 Cal. 2d 284, 291 (approving the holding in *Santers* that the deed of trust can only be foreclosed by the owner of the note).   In 2013 Cal. Civil Code §2924(a)(6) was amended and forbid an entity from initiating a trustee sale unless it is the holder of the beneficial interest under the deed of trust, the original or substituted trustee under the deed of trust or designated agent of the holder.

21.    Plaintiffs contend that none of the Defendants qualify under Civil Code §2924(a)(6).

22.    Plaintiffs further allege neither Wells Fargo nor Bank of America were ever legally assigned the Note and/or Deed of Trust, and have no legal authority to exercise the power of sale under Cal. Civ Code §2924, *et seq.*

23.    Plaintiffs allege that National Default Servicing Corporation (hereafter "NDS"), the alleged Trustee foreclosing on the Property, has initiated foreclosure without any authority whatsoever.

24.    The title to Plaintiffs' home has been slandered, clouded, and its salability has been rendered unmarketable.

## III.    DEFENDANTS FAILED TO COMPLY WITH CODE §2923.55 PRIOR TO INITIATING FORECLOSURE

25.    On or about March 6, 2013, NDS recorded a Notice of Default and Election to Sell Under Deed of Trust stating that Plaintiffs were behind in their monthly payments.   It stated "by paying all your past due payments, plus permitted costs and expenses."

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

26.     California Civil Code §2923.55 provides that a borrower may designate an attorney to discuss options with the mortgagee, beneficiary, or authorized agent, on the borrower's behalf, to avoid foreclosure. §2923.55(a) states impart:

(a) (1)      A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not [1] record a notice of default pursuant to §2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision [2](e), et seq.

27.     None of the Defendants, nor their representatives complied with the due diligence requirements to contact Plaintiffs or their legal counsel to discuss their financial condition and the impending foreclosure.  Defendants did not comply with any of the requirements under §2923.55 & §2923.55 and therefore the NOD is void. (See Declarations of Marshall & Lydia Sanders, ¶7-12)

28.     California Civil Code §2923.55[13](e) states that [a] notice of default may be recorded pursuant to §2924 when a [15] mortgage servicer has **not** contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. "Due diligence" shall require and mean the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

29.     Defendant's Notice of Default offers no explanation of compliance with the legally required notice requirements under § 2923.55.  The purpose of the statutorily required notice under §2923.5 is to require lenders to contact borrowers to discuss foreclosure alternatives and prevent unlawful foreclosure. If Defendants would have contacted Plaintiffs prior to the recording the Notice of

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

Default as required by California Law an informal resolution may have been reached, but Defendant's failure to follow California Law has led to this litigation.

30.     Since the contact required by Cal. Civ. Code §2923.55 did not occur, the foreclosure is in violation of Cal. Civ. Code §2923.55

31.     Since the contact required by Cal. Civ. Code §2923.5 did not occur, the foreclosure is in violation of Cal. Civ. Code §2923.5.

## IV.     THE DEFENDANTS HAVE FAILED TO COMPLY WITH THE TERMS AND CONDITIONS OF THE DEED OF TRUST

32.     Paragraph 24 of the Deed of Trust provides that "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed here under by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located... This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution." (See Complaint Exhibit "A", Paragraph 24)

33.     The Deed of Trust identifies Countrywide as the Lender and ReconTrust as Trustee. Countrywide never executed a Substitution of Trustee appointing NDS as a successor trustee. Because the lender and borrower incorporated this requirement into the deed of trust, the parties made it a condition precedent to the lender's right to foreclose. (See, e.g., *Pfiefer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1268-1278, 1281; *Fonteno v. Wells Fargo Bank, N.A.*, 228 Cal.App.4th 1358.

34.     Throughout the foreclosure process, the mortgage servicer is required to ensure that all documents in support of the foreclosure have been verified for accuracy are complete and are supported by complete and reliable evidence.

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

35.     Defendants have initiated the foreclosure process by recording Notice of Default (See Exhibit "A"), which is being relied upon to initiate the pending foreclosure, makes several statements including by not limited to:

> "That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such deed of trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby."

36.     Plaintiffs allege that NDS in its capacity as the alleged successor Trustee for the Beneficiary which is not even identified in the NOD, did not comply with Cal Civ. Code §2924.17.  Specifically, either Bank of America or Wells Fargo did not deliver to NDS the following: 1) Deed of Trust; and 2) any documents evidencing obligations secured.  NDS never verified any of the statements made in the NOD. (See Exhibit "A", attached hereto)  Furthermore, NDS as the alleged successor trustee never verified any of the statements in any Notice of Trustee's Sale.

V.     **THE INTENT OF THE HOMEOWNER'S BILL OF RIGHTS**

37.     The HBOR was created in part to encourage mortgage servicers to offer loan modifications; the California legislature passed "The California Homeowner Bill of Rights." The law provides in part that, "It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or work out plan if such a plan is consistent with its... authority" *See* Cal. Civ. Code §2923.6(b).  The Homeowner Bill of Rights became effective on January 1, 2013.  The HBOR also requires lenders to designate a "single point of contact" for borrowers to request foreclosure alternatives and provide the borrower one or more direct means of communicating with that point of contact. The single-point-of-contact provision "is intended to prevent borrowers from being given the

Law Offices of Jason W. Estavillo, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:   (510) 982-3002

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

run around, being told one thing by one bank employee while something entirely different is being pursued by another" *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal. App. 4th 872, 904-905.

38.     In this case, multiple assignments have occurred between Wells Fargo and Bank of America, but the Notice of Default was recorded by National Default Servicing Corporation as Trustee for Select Portfolio Servicing, Inc. There is no mention of the actual beneficiary in the NOD and it is unclear whether the beneficiary is Bank of America, Wells Fargo or Countrywide. These overcomplicated and unnecessary lending practices are exactly what the Homeowner's Bill of Rights was designed to prevent. Defendants made this matter unnecessarily complicated and violated Cal. Civ. Code § 2923.7 by failing to provide Plaintiffs with a single point of contact.

## VI.     RESCISSION DIVESTS DEFENDANTS' OF ANY INTEREST IN PLAINTIFF'S LOAN

39.     On February 17, 2010, Plaintiffs sent notice to BofA, Wells Fargo, Countrywide and other third parties of Plaintiffs' intention to rescind the loan under 15 U.S.C §1635.  (See Supporting Declarations of Marshall & Lydia Sanders ¶14)

40.     None of the named Defendants nor Countrywide ever contacted Plaintiffs in response to said rescission within the twenty days.  Per 15 U.S.C. §1635(b) their failure to timely respond vests ownership of the property to the Plaintiffs. (See Supporting Declarations of Marshall & Lydia Sanders, ¶17)

41.     Therefore none of the Defendants had the authorization to initiate the non-judicial foreclosure.

## VII.     PLAINTIFF SATISFIES THE REMAINING *WINTER* FACTORS.

42.     Plaintiff has demonstrated the existence of serious questions as to the merits of their claim. An analysis of the remaining *Winter* factors compels the conclusion that the Court should grant their request for a preliminary injunction.

///

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:   (510) 982-3002

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

///

## A. Plaintiff Faces Irreparable Injury.

43.   If the preliminary injunction is not granted, Plaintiffs will suffer an irreparable injury by virtue of losing ownership of their home.  It is well established that the loss of a person's home through foreclosure constitutes an immediate, irreparable injury that has no adequate remedy at law. *Sundance Land corp. v. Community First Fed Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988); *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899, 2011 WL 2345036, at *1 (S.D. Cal. June 15, 2007) ("Losing one's home through foreclosure is an irreparable injury.")' *Bland v. Carone Family Trust*, No. 07-CV-418, 207 WL 951344, at *3 (S.D. Cal. Mar. 19, 2007) ("The court finds irreparable harm if plaintiffs' residence is sold prior to determining the merits of plaintiffs' claims.").  Numerous courts have found this injury enough by itself to mandate preliminary injunctive relief. *See, e.g., Nichols v. Deutsche Bank Nat. Trust Co.*, No. 07-CV-2039, 2007 WL 4181111, at *2 (S.D. Cal. Nov. 21, 2007); *United Church of Med. Ctr. V. Med. Ctr. Comm'n*, 689 F. 2d 693, 701 (7th Cir. 1982) ("A piece of property is always considered unique, and its loss is always an irreparable injury."); *Johnson v. U.S. Department of Agriculture*, 734 F. 2d 774, 789 (11th Cir. 1984) ("[I]rreparable injury is suffered when one is wrongfully ejected from his home.  Real property and especially a home is unique").

44.   It is also clear that this harm is an immediate one and not a speculative one.  Defendants have expressly declined to forestall any foreclosure proceedings against Plaintiffs even by the short period of time corresponding to the time period needed to resolve a noticed motion.

## B. The Balance of Hardships Tips Sharply in Plaintiff's Favor.

45.   In order to obtain injunctive relief, a plaintiff must establish that "the balance of equities tips in his favor." *Winter*, 555 U.S. at 20.  The district court "must balance the competing claims of injury

Law Offices of Jason
W. Estavillo, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:   (510) 982-3002

15

and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* At 24 (quoting *Amoco Production co. v. Village of Gabell, Alaska*, 480 U.S. 531, 542 (1987)).

46.    In the instant case, the balance of hardships weighs in Plaintiffs' favor.  If the sale of the Plaintiffs' property proceeds as scheduled, Plaintiffs will lose their home.   In contrast, even if Defendants were ultimately to prevail, a preliminary injunction would only delay the sale of the subject property until after the conclusion of the litigation; they would still retain their security interest in the property.  The fact that Defendants might not recover money until the matter is fully adjudicated "is not enough to outweigh the irreparable injury that the plaintiff would suffer if the foreclosure sale were not enjoined." *Tamburr*, 2011 WL 2654093, at *2 (citing *California Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) (stating that "[t]ypically, monetary harm does not constitute irreparable harm")).  Therefore, the balance of hardships tips sharply in Plaintiffs' favor. *Id.; see also Naderski v. Wells Fargo Bank, N.A.*, No. CV-11-1783, 2011 WL 1627161, at *2 (C.D. Cal. Apr. 25, 2011) (finding that "the balance of hardships tips sharply in plaintiff's favor: if the trustee's sale is not enjoined plaintiff is likely to forever lose her home, whereas defendants will only experience a temporary delay in earing income from the investment.").

### C. A Preliminary Injunction Serves the Public Interest.

47.    The public interest will certainly be served by the issuance of injunctive relief in this case. This Court has observed, "the adverse impact foreclosures have on households and communities, as well as the societal benefits of home ownership, demonstrate the strong public interest in preventing unlawful foreclosures." *Sharma v. Provident Funding Assoc., LP*, No. C-095968, 2010 WL 143473, at *2 (N.D. Cal. Jan. 8, 2010).

48.    Furthermore, injunctions against foreclosures on homes are in the public interest because the public benefits when lenders are forced to comply with foreclosure statues and citizens are protected

LAW OFFICES OF JASON W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

from wrongful foreclosures. *Tamburri*, 2011 WL 2654093, at *2 (citing cases). *See also, Sencion v. Saxon Mortg. Services, LLC*, No. 5:10-cv-3108, 2011 WL 1634007, at *3 (N.D. Cal. Apr. 11, 2011) ("[I]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their home."). A non-judicial foreclosure is an extraordinary remedy and those seeking to take advantage of this remedy should be required to follow the law.

## VIII.   **PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND.**

49.     The Ninth Circuit has recognized that Federal Rule of Civil Procedure 65(c) vests "the district court with discretion as to the amount of security required, if any." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). Indeed, courts may dispense with the filing of a bond altogether "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Joregensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003).

50.     In the instant case, there is no realistic likelihood of harm to Defendants if a bond is not required. Plaintiffs reside at the subject property and they are pursuing this action in the hopes of retaining their ownership and possession of the property. As such, Plaintiffs have every incentive to maintain the subject property. Furthermore, if Plaintiffs are unsuccessful at trial on the merits of this case, Defendants will still be entitled to proceed with the sale of the subject property. The only harm that could come to Defendants if Plaintiffs is unsuccessful at trial would be the minimal cost of rescheduling the foreclosure sale.

51.     Accordingly, no bond should be required upon the issuance of a preliminary injunction in this matter. If required, however, Plaintiff submits that a bond of $1,000.00 would be more than adequate.

///

///

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile: (510) 982-3002

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE

## **CONCLUSION**

Given the irreparable harm that Plaintiffs will suffer if they are not granted immediate relief, this Court should issue the requested temporary restraining order and preliminary injunction enjoining the Defendants from foreclosing on the loan or selling

Dated: June 11, 2015                                    LAW OFFICES OF JASON W. ESTAVILLO, PC

                                                        /s/
                                                        _____
                                                        Jason W. Estavillo
                                                        Attorney for Plaintiff

LAW OFFICES OF JASON
W. ESTAVILLO, PC
1330 Broadway, Suite 1030
Oakland, CA 94612
Telephone: (510) 982-3001
Facsimile:  (510) 982-3002

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE



1621 Kensing Lane
Santa Ana, CA 92705-3074


February 17, 2010

Countrywide Home Loans, Inc.
(Now known as: Bank of America)
400 Countrywide Way
**Simi Valley**, CA 93065-6298

Countrywide Bank, N.A.
1199 North Fairfax St., Ste. 500
Alexandria, VA 22314

Bank of America
Home Retention Department
475 Crosspoint Parkway
NY2-002-01-17
Getzville, NY 14068-1609

ReconTrust Company, N.A.
A Wholly-owned subsidiary of
Bank of America
1800 Tapo Canyon Rd.
CA6-914-01-94
**Simi Valley**, CA 93063-6712

ReconTrust Company, N.A.
225 West Hillcrest Drive
MSN TO-02
Thousand Oaks, CA 91360-7883

Wells Fargo
Wells Fargo Bank, N.A.,
As Trustee for Harborview Mortgage Loan,
Trust Mortgage Loan Pass-through Certificates, Series 2007-1
C/o BAC Home Loans Servicing, LP
Foreclosure Department
400 Countrywide Way, SV-35
**Simi Valley**, CA 93065-6298

MERS
Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48051-2026

1

Re:          **DEMAND & NOTICE OF RESCISSION**
                     <u>Property</u>: 1621 Kensing Lane, Santa Ana, CA 92705-3074
                     <u>Originating Loan No.</u> 154127473 (Countrywide)

Dear Sir(s) and or Madame(s):

       This correspondence will serve to memorialize my (hereinafter, "Borrower") dispute with the above-referenced mortgage loan by, through, originated, serviced or otherwise now in the hands of your office or under your dominion and control, and as Notice of my Intent to file legal action pursuant to the California Code of Civil Procedure within 30 days from this date.

       Further, this correspondence will serve as notice to rescind the above-referenced mortgage loan based on your violations of each of the following federal and state laws, including, but not limited to, the Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA"), California Unfair/Deceptive Business Practices Act, Breach of Fiduciary Duty, Breach of the Implied Covenant of Good Faith and Fair Dealing, Civil Code §1688, and others.

       Please be advised that the security interest in the above-referenced property is now void per this notice and you have 20 days to return all payments made on this loan and to do your part to terminate the security interest in the home. Upon compliance with the above, I, or my representative, will be contacting you to discuss the tender of the reduced payoff amount subject to offset for all damages and costs.

## VIOLATIONS OF TRUTH IN LENDING ACT (TILA)

       The purpose of TILA is "to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them." If the interest rate is not fixed, then the Truth in Lending Disclosure Statement must inform the borrower of the variable rate feature of the loan. Additionally, federal courts have held that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all."[1]

- Did not deliver good faith estimates of disclosures (preliminary TILDS) within 3 days of loan application.[2]
- Did not provide 2 copies of the completed Right to Cancel.[3]
- The Truth in Lending Disclosure was not provided.[4]

---

[1] *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980) and *Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 174 (1st Cir. 2004) (quoting *Smith v. Chapman*).
[2] 12 C.F.R. §§ 226.19(a)
[3] 12 C.F.R. §§ 226.23(b)
[4] 12 C.F.R. §§ 226.17, 226.18

- Hazard insurance disclosure was not provided.[5]

- "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) was not provided within 3 days of application.[6]

Each of these violations is subject to civil remedies in law and equity, in addition to the recovery of attorney's fees and costs of litigation.

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

There is no evidence to confirm that the borrower received all of the disclosures mandated by law. The transfer servicing disclosure special information booklet and affiliated business agreement disclosures do not appear to have been received by the borrower.

- Did not disclose all affiliated business arrangements.[7]
- HUD-1 was not provided at closing (or 1 day before if requested) and accurate.[8]
- Transfer servicing disclosure was not provided at or prior to closing.[9]

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE[10], BREACH OF FIDUCIARY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Here, numerous violations of the CA B&P Code have occurred.

I.   **Underwriting Standards Were Ignored; Borrower Qualification based on Value of Collateral, rather than Ability to Repay the Loan**

The purpose of an underwriter is to determine whether the borrower can qualify for a loan and if the borrower has the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, proved by

---

[5] 12 C.F.R. § 226.4(d)(2)
[6] 12 C.F.R. § 226.19(b)
[7] 24 C.F.R. § 3500.15
[8] 24 C.F.R. § 3500.8(b)
[9] 24 C.F.R. § 3500.21
[10] As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice, and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1(commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code: Violations of specific code sections 10240-10248.3; 10241.

getting pay stubs, 1040s, W-2's, and a Verification of Employment and Income on the borrowers.

If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed and a proper determination of risk should have been made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.

If the underwriter had performed his/her duties accordingly, he/she would have declined this loan due to the inability of the borrower to pay. Further the loan was a stated income loan and was apparently underwritten with an automated underwriting system which is merely intended to be a guide or a preliminary approval system. The underwriter failed to properly examine this loan, and as a result, borrower has been seriously damaged.

## II.   Predatory Lending

The office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in unfair and deceptive business practices. Some of those characteristics here include:

- Borrower was a minority, and/or elderly or disabled, and/or the transaction was conducted in a foreign language or otherwise incapable of being understood.[11]
- Other unfair, deceptive, or fraudulent practices in transaction.
- Mortgage broker and corresponding lender involved.

## III.   Breach of Fiduciary Duty

Both lender and broker have a fiduciary responsibility to the borrower. The fiduciary duty of the broker (i.e. duty of trust) is to deal with the consumer in good faith. If the broker knew or should have known that the borrower will or has a likelihood of defaulting on this loan, he/she had a fiduciary duty to the borrower to not place them in that loan (in harm's way).

The fiduciary duty of the broker, as agent for the lender, is the same—to deal with the consumer in good faith, educate the borrowers about loan programs, and other options available to the borrowers, perform their own due diligence to determine if the borrowers are being placed in a loan that is legal, properly disclosed, is the best loan for the borrower given their financial circumstance, and is affordable over the life of the loan.

Here, the Borrower was placed into the current loan product without regard for the ability to repay, likely they would default or incur bankruptcy as a result of the loan, and it was reasonably foreseeable that such would occur.

---

[11] California Civil Code § 1632

In addition, the above-described acts were a violation of the implied covenant of good faith and fair dealing.

## VIOLATION OF CALIFORNIA CIVIL CODE

The California Civil Code has certain provisions that are intended to protect borrowers when attempting to procure a loan from a financial institution or lender:

First, the law requires certain procedural safeguards to protect the borrower such as receipt of specific disclosure notices from the lender. Civil Code §§ 1916.5 and 1916.7. An applicant for a loan pursuant to the provisions of this section must be given a disclosure notice in the following form:

*"NOTICE TO BORROWER, IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE-RATE LOAN. PLEASE READ CAREFULLY..."*

This disclosure was not provided to the borrower at any time during the processing of the loan, nor was any alternative loan product offered to the borrowers.

Also, the lender must notify borrowers of any changes in the interest rate and monthly payment on a loan. The fully amortized rate changes monthly, so the borrower should be notified monthly, in accordance with the above statute. Lender has failed to do so and thus violated the law.

Additional violations of Civil Code §§ 1920-1921 have occurred: adjustment of rate did not take into consideration the ability of borrower to repay; change in rate was not reflected in security instrument; borrower was not provided notice of change of rate monthly; there was a prepayment penalty in the note; borrower was not adequately advised of negative amortization.

These Civil Code violations carry with them damages, attorney's fees, costs of suit, and other legal and equitable relief.

## SECURITIZATION & MERS & QUALIFIED WRITTEN REQUESTS

Mortgage Electronic Registration Systems (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignments of mortgages, with the idea that MERS would be the mortgagee of record. This would allow "MERS" to foreclose on the property, and at the same time, assist the lenders in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved the lenders money in manpower and the costs of recording these Assignments. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS' "assigned officer" has a conflict of interest.

Since neither MERS nor the servicer has a beneficial interest in the Note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the assignment in the name of MERS, the assignment executed by the MERS employee is illegal. The actual owner of the Note has not executed the assignment to the new party. An assignment of a mortgage in the absence of the assignment and physical delivery of the Note will result in a nullity.

It must also be noted that the lender or other holder of the Note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage Note, nor do they acquire any beneficial interest in the Note.

The existence of MERS constitutes numerous violations of the California Business and Professions Code, as well as Unfair and Deceptive Acts and Practices, due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices was intentionally designed to mislead the borrower and benefit the lenders.

To the extent that this loan has been sold, transferred or assigned, this letter shall also serve as a Qualified Written Request ("QWR") pursuant to RESPA (12 USC § 2600 et seq.), for the following information:

1.     All documents which relate to the original loan transaction which is the subject of this request (hereinafter, "the transaction"), including but not limited to, loan application(s), good faith estimate(s), loan commitment letter(s), Truth in Lending Disclosure Statement(s), Notice(s) of Right to Cancel, HUD-1 or final settlement statement(s), promissory note or notes/agreement(s), mortgage(s)/deed(s) of trust.

2.     All purchase and sale of mortgage agreements, sale or transfer of servicing rights or other similar agreement related to any assignment, purchase or sale of the mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government-sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to the mortgage, promissory note and deed of trust from the inception of the loan through the present date.

3.     All assignments, transfers, or other documents evidencing a transfer, sale or assignment of the mortgage, deed of trust, promissory note or other document that secures payment by me to the obligation in this account from the inception of the loan to the present date.

4.     All deeds in lieu, modifications to the mortgage, promissory note or deed of trust from the inception of the loan to the present date.

5.      Each and every canceled check, money order, draft, debit or credit notice, issued to any servicer of the account for payment of any monthly payment, other payment, escrow charge, fee or expense on the account.

6.      All escrow analyses conducted on the account from the inception of the loan to the date of this letter.

7.      Each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on the disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney's fees, points, etc.

8.      Copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by borrower(s) or by others on the account.

9.      All letters, statements and documents sent to borrower(s) by your company.

10.      All letters, statements and documents sent to borrower(s) by agents, attorneys or representatives of your company.

11.      All letters, statements and documents sent to borrower(s) by previous servicers, sub-servicers or others in your loan file or in your control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

12.      All letters, statements and documents contained in the loan file or imaged by you, any servicer or sub-servicers of the mortgage from inception of the loan to the present date.

13.      All electronic transfers, assignments, sales of the Note, mortgage, deed of trust or other security instrument.

14.      All agreements, contracts and understandings with vendors that have been paid for by any charge to the account of borrower(s) from the inception of the loan to the present date.

15.      All agreements, contracts and understandings between you and the loan originator for this transaction.

16.      All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers and documents that relate to the accounting of the loan from inception to the present date.

17.    All loan servicing transaction records, ledgers, registers and similar items detailing how the loan has been serviced from loan inception to the present date.

18.    All loan servicing agreements between the servicer(s) and the loan holder, lender, and/or trustees.

19.    Copies of all sales contracts, servicing agreements, assignments, transfers, indemnification agreements, recourse agreements, mortgage insurance contracts and any agreement related to the loan from its inception through actual receipt of this communication; assumed to be three business days ahead of the date written above.

Further, please provide, in writing, the answers to the questions listed below.

1)    Please identify the name, address and telephone number of the current holder (or owner) of the Note.

2)    Please identify the name, address and telephone number of the current holder (or owner) of the mortgage (or deed of trust).

3)    Identify the name, address and telephone number of the mortgage broker involved in the transaction.

4)    Identify any and all fees or any "things of value" provided to mortgage broker in the transaction.

5)    Identify specifically how the "Annual Percentage Rate" and "Amount Financed" were calculated in connection with this loan.

6)    Please identify where the originals of the entire loan file are currently located and how they are being stored, kept and protected/safeguarded.

7)    Where is the "original" promissory note or mortgage located? Please describe its physical location and anyone holding this Note as a custodian or trustee, if applicable.

8)    Where is the "original" deed of trust located? Please describe its physical location and anyone holding this deed of trust as a custodian or trustee, if applicable.

9)    Has the mortgage loan been made a part of any mortgage pool since the inception of the loan? If yes, please identify each and every loan mortgage pool that the mortgage has been a part of from the inception of the mortgage to the present date.

10)    Have there been any "investors" who have participated in any mortgage-backed security (MBS), collateral mortgage obligation (CMO) or other mortgage security instrument that the mortgage loan has ever been a part of from the inception of the

mortgage loan to the present date? If yes, please identify the name and address of each and every individual, entity, organization or company.

11)     Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, transfers, indemnification agreements, mortgage insurance contracts, recourse agreements and any agreement related to the loan from its inception to the current date written above.

**Borrower hereby demands:**

- That, pursuant to the above regulations, lender shall rescind the loan made by defendants to secure the property and all security instruments in connection with those loans; and that all costs to acquire those loans plus all interest paid shall be refunded to borrower.

- That defendants will re-secure the property with a new loan at an amount equal to today's current market value, and with the terms that were originally disclosed, but at a payment not to exceed 28-31% of borrower's income as should have been done in the first place.

- That lender reimburse plaintiffs for all costs to resolve this matter, including but not limited to attorney's fees, investigation fees, audit(s) performed by third parties, expert witness consultations, and out-of-pocket costs and expenses, including travel and lodging expenses to meet and confer with mortgage and banking personnel and government regulatory officials and politicians to determine the breadth and scope of the injuries inflicted upon borrower in the perversion of the loan process.

- That lender pays damages in the amount of $100,000,000,000,000.00 to restore the class/borrower and any and all collateral foreclosed, plus treble damages.

- That lender pays damages in the amount of $100,000,000,000,000.00 to class/borrower for stress, harassment, threats, trespass, conversion, false imprisonment, intentional and negligent infliction of emotional distress, false credit reporting, and negative and detrimental libel and slander of borrower's character, plus trebled damages .

- That, pursuant to the requests above, a statutorily timely response to the request for documents and information is provided.

Demand is herewith made that all efforts at sale, eviction or foreclosure be stopped immediately as the property is scheduled for eviction or sale.

Furthermore, and in accordance with the Fair Credit Reporting Act, while this matter is in dispute, the lender must not report any negative information on this account

to any reporting agency and/or credit bureau(s), and that with resolution of this matter, the lender will report the account "paid as agreed" and will remove any derogatory information from their credit report, to include any foreclosure filings and other references to foreclosure.

If this does not immediately comport with your full understanding of this matter or you do not agree with this demand, you should so notify me [or my representative(s)] immediately via the most expedient means at your disposal directed to me at the collateral address noted at the beginning of this communication, in writing.

You have twenty (20) days from receipt of this letter to comply with these demands. Please govern yourselves accordingly; bearing in mind as paramount that time is of the essence.

We look forward to your timely compliance.

Most respectfully yours,


Marshall Sanders