Name: Marshall Sanders, Pro Se
Lydia O. Sanders, Pro Se
Address: 1621 Kensing Ln.
Santa Ana, CA 92705

Phone: (714) 665-8012

Fax: (714) 665-8012

In Pro Per

2015 SEP 14 PM 2:04
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY
FILED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Marshall S. Sanders and
Lydia O. Sanders Trustee(s)
of the Marshall and Lydia
Sanders Trust dated 4/20/10,
                    Plaintiff

v.

Bank of America, etal.

                    Defendant(s).

CASE NUMBER:

8:15-CV-00935-AG-AS

Memorandum of Points and Authorities
TITLE OF PLEADING

Cover Sheet.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

1.      Plaintiffs seek a Temporary Restraining Order under Federal Rule of Civil Procedure § 65 to bar the Trustee's sale of the Plaintiffs' property because none of the Defendants have any demonstrable legal or beneficial interest in the Plaintiffs' Deed of Trust or Promissory Note. The Plaintiff also seek to halt the foreclosure sale of their residence, because the non-judicial requirements under the California Homeowner Bill of Rights ("HBOR") have not been complied with by any of the Defendants.

2.      The Homeowner's Bill of Rights ("HBOR") became effective as of January 1, 2013, and it creates a private right of action for borrowers, who may now enjoin a pending trustee's sale or recording of the trustee's deed if the mortgage servicer violates the laws requirements[1].

3.      The injunctive relief remains in place until the mortgage servicer corrects the violation[2].

4.      If a trustee's sale is completed in violation of the law's requirements, a borrower may recover actual damages or in the case of willful intentional, or reckless violations, the greater of treble or actual damages of $50,000.00[3].

5.      Finally, Plaintiffs rescinded their loan on February 17, 2010 under 15 U.S.C. §1635 and none of the Defendants responded to said rescission.

## INTRODUCTION

6.      The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Le v. 1st Nat. Lending Services*, No. 13-cv-01344-LHK, 2013 WL255556, at

---

[1] The private right of action is limited to enforcement of §§2923.5, 2923.55 (notice requirements), 2923.6 (dual-tracking), 2923.7 (single point of contact), 2924.9 (post-notice of default notice requirements), 2924.10 (acknowledgment of receipt), 2924.11 (dual tracking, and 2924.17 (verification of documents). Homeowner Bill of Rights (to be codified at Cal. Civ. Code §2924.12(a)(1)). Other provisions of the law still may be enforced through California's Unfair Competition Law, which allows aggrieved parties to sue for restitution and injunctive relief, in addition to any existing remedies. Cal. Bus. & Prof. Code §17200 (2012).
[2] "Homeowner Bill of Rights (to be codified at Cal. Civ. Code §2924.12(a)(1)).
[3] Id. (to be codified at Cal. Civ. Code §2924.12(a)(2)).

4

*1 (N.D. Cal. June 7, 2013). A court may issue a temporary restraining order or a preliminary injunction to preserve the positions of the parties until a full trial can be conducted. Fed. R. Civ. Proc. 65; *LGS Architects, Inc. cc. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006). In analyzing whether to grant a preliminary injunction, courts consider a four-factor test: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff is likely to suffer irreparable harm in the absence of injunctive relief; (3) whether the balance of equities tips in the plaintiff's favor; and (4) whether an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S 7, 20 (2008).

7.      The four *Winter* elements are evaluated on a sliding scale so that each element is balanced, and a stronger showing on some elements may offset a weaker showing on other elements. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Accordingly, a court may grant a preliminary injunction even when it cannot determine with certainty that the plaintiff will likely prevail on the merits. *Id.* At 1134-35.   Indeed, where a plaintiff demonstrates the likelihood of irreparable harm, that the balance of hardships is tipped sharply in the plaintiff's favor, and that the public interest favors injunctive relief, that plaintiff need only demonstrate that it raised "serious questions" going to the merits of the claims to be entitled to injunctive relief. *Id.*

8.      Applying the *Winters* elements to this case it is clear injunctive relief must be granted. (1) Plaintiffs have a strong likelihood of success on the merits. Plaintiffs are alleging that there original lender Defendants and non-party Countrywide Plaintiffs' original lender engaged in fraudulent and unlawful business practices including the unlawful recording of instruments and violating the Homeowner's Bill of Rights (hereafter "HBOR).   HBOR was enacted to prevent unlawful foreclosures such as the one Plaintiffs' are facing. It is also worth noting that Plaintiffs original lender, Countrywide, is an entity that was so embroiled in unlawful activity that it was forced to reach

5

settlements with the California Department of Justice, Federal Trade Commission, U.S. Department of Justice and the Security Exchange Commission. Additionally, due to the extensive abuses in the mortgage industry numerous lawsuits have emerged and the California Supreme Court is currently reviewing the matter of unlawful foreclosure and invalid assignments in *Yvanova v. New Century Mortgage Corporation* Case No. S218973. The outcome of this case will have a major impact on Plaintiffs' case and based on the above there is a strong likelihood on the merits. (2) If the Trustee's sale goes through Plaintiffs will lose their unique residential home, which will result in irreparable harm. (3) The balance of equities tips in Plaintiffs' favor, because Plaintiffs appear to have been one of the countless victims of the fast and loose practices of the mortgage industry. (4) Injunctive relief is in the public interest, because foreclosure results in vacant homes, reduced property values, increased crime and will leave Plaintiffs without a home.

9.      The sliding scale factor also tips heavily in Plaintiffs favor. Plaintiffs are residing in their primary residence, but the loss of their home and their subsequent removal will result in irreparable harm. Conversely, defendants will suffer nominal to no harm if the Trustee's Sale is delayed. If this foreclosure turns out to be lawful they will obtain money from the sale of the property. All the *Winters* factors and the balance of harms tips heavily in Plaintiffs' favor, therefore Injunctive relief should be granted.

**I.      THE COURT SHOULD ENJOIN THE NON-JUDICIAL SALE OF PLAINTIFFS' HOME BECAUSE THE AMOUNT LISTED IN THE NOTICE OF DEFAULT IS UNCERTAIN AND IN DISPUTE.**

10.      For more than a century, it has been established California law that a foreclosure sale ought not to be made when the debt is uncertain or in dispute. *See More v. Calkins*, 85 Cal. 177, 188 (1890). "Given the drastic implications of a foreclosure, it is not surprising to find courts quite frequently granting preliminary injunctions to forestall this remedy while the court considers a case testing whether it is justified under the facts and law." *Baypoint Mortgage Corp. v. Crest Premium Real*

6

*Estate etc. Trust,* 168 Cal. App. 3d 818, 829-30 (1985). *See also Stockton v. Newman,* 148 Cal. App. 2d 558, 559-60 (1957) (affirming preliminary injunction; "[I]f [defendants] proceed with the sale under deed of trust, [plaintiff] will be deprived of this particular piece of property and such damage may be considered irreparable for in equity each parcel of real property is considered unique.").

11.     Misunderstandings between the parties are common in complex loan transactions, and a trustor's failure to make a payment demanded by the beneficiary is not necessarily a breach of the obligations. *See, e.g., Hauger v. Gates,* 42 Cal. 2d 752 (1954) default excused as offset against beneficiary); *Strike v. Trans-West Discount Corp.,* 92 Cal. App. 3d 735 (1975) (vacating notice of default that was based on usurious claim). "[T]he notice of default will be strictly construed and must correctly set forth the amounts required to cure the default." *Sweatt v. Foreclosure Co.,* 166 Cal. App. 3d 273, 278 (1985). Furthermore, a defect in the notice, such as a misstatement of the amount in default, will void any sale, and the trustee may refuse to convey the trustee's deed. *Angell v. Superior Ct.,* 73 Cal.App.4th 691, 699 (1999).

12.     Plaintiffs' likelihood of prevailing at trial is substantial.  These are not mere technicalities of "crossing I's and dotting t's." These are substantive legal rights that Plaintiffs have the right to exercise in a court of law.  Without an immediate halt the foreclosure, Plaintiffs will lose their home – a loss which is irreparable and cannot be adequately compensated for by money.

13.     Accordingly, Plaintiffs respectfully request that this Court should issue an order enjoining Defendants from foreclosing on their home in any manner until the Court can determine whether, and to what extent, any monies are still owed to Defendants.

///

///

///

7

II.   **CIVIL CODE SECTION 2923.55 AFFORDS A BORROWER PROTECTIONS FROM CONFUSION AS TO THE OWNERSHIP OF THEIR LOAN ALONG WITH THE PROCEDURE OF HOW ONE PROCEEDS WITH A FORECLOSURE OF REAL PROPERTY**

14.   California foreclosure law requires that the trustee, the beneficiary or their authorized agent follow certain procedures in order to enforce a power of sale clause in a deed of trust. *See* Cal. Civ. Code §2924(a)(6) states: "the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest". A foreclosing party must strictly comply with the statutory requirements, otherwise the sale is invalid.

15.   The Notice of Default at issue in this case is subject to the authority of California Government Code §27201, the Recording Statute. The statute is clear in its characterization of instruments and the requirements necessary for filing instruments. The mere recordation of an instrument does not impart any presumption of its legal sufficiency. While any instrument filed may be in proper in form, its legal sufficiency is determined by evidence. Further, the instrument must be acknowledged as to the recitals contained therein. See: Cal. Gov't. Code §§§§§ 27201, 27282, 27286, 27287, 27288, 27289.

16.   The Notice of Default ("NOD") herein lacks any evidence to support the recitals contained therein, specifically, that "That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all

8

sums secured thereby immediately due and payable and has ejected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby." (See Exhibit "A", attached hereto). The declaration of default attached to the instrument, is void under Cal. Civ. Code §2923.5. There is not a statement by the executor of the instrument that he/she has personal, first-hand knowledge of the facts alleged in the instrument. There is also an allegation of an amount as past due, yet no evidence of the source of the allegation, the date or time the allegation was made, or by whom, is attached. The instrument is wholly un-supported and is subject to the hearsay rule.

17. Plaintiffs herein deny the existence of the default as described in the NOD (See Supporting Declarations of Marshall & Lydia Sanders, ¶7). Because the instrument violates both the statute and the Deed of Trust on its face, it is not a "privileged communication" under Cal. Civil Code §2924, it is an un-privileged, un-qualified document executed with malice and if left outstanding would cause further irreparable damage to Plaintiffs. The instrument prejudices Plaintiffs' rights both under contract and under the statutes at California Civil Code §2924 *et. seq.*, and California Government Code §27201 *et. seq.* also see: Cal. Civil Code §§2924(a)(1)(D) and 2924(e) wherein it is clear that only a default "actually known to the beneficiary" is within the scope of the NOD. No evidence of such knowledge is attached to the instrument.

18. Plaintiffs contend that none of the Defendants or their agents complied with Cal. Civ. Code §2923.5(g)

19. Plaintiffs allege that no such declaration has been made by the Beneficiary, or its officers. Without such requisite evidence or acknowledgement, the instrument is void and represents a cloud against the interests of Plaintiffs. Plaintiffs will show evidence that the NOD contains false statements known to be false at the time of execution and is, therefore, a False Instrument as defined by the Cal. Penal Code §115.5.

9

20.     A deed of trust can only be foreclosed by the owner of the note, as a matter of law.  See *Santerns v. Los Angeles Fin. Co.*, (1949) 91 Cal.App.2d 197, 201-202 (resolving who had a superior interest in the property at issue-a judgment creditor who executed or the owner of the note and deed of trust and deciding in favor of the owner of the note and deed of trust because he acquired his rights before the judgment creditor).  See also *Cockerell v. Title Ins. & Trust Co.*, (1954) 42 Cal. 2d 284, 291 (approving the holding in *Santers* that the deed of trust can only be foreclosed by the owner of the note).  In 2013 Cal. Civil Code §2924(a)(6) was amended and forbid an entity from initiating a trustee sale unless it is the holder of the beneficial interest under the deed of trust, the original or substituted trustee under the deed of trust or designated agent of the holder.

21.     Plaintiffs contend that none of the Defendants qualify under Civil Code §2924(a)(6).

22.     Plaintiffs further allege neither Wells Fargo nor Bank of America were ever legally assigned the Note and/or Deed of Trust, and have no legal authority to exercise the power of sale under Cal. Civ Code §2924, *et seq.*

23.     Plaintiffs allege that National Default Servicing Corporation (hereafter "NDS"), the alleged Trustee foreclosing on the Property, has initiated foreclosure without any authority whatsoever.

24.     The title to Plaintiffs' home has been slandered, clouded, and its salability has been rendered unmarketable.

## III.   DEFENDANTS FAILED TO COMPLY WITH CODE §2923.55 PRIOR TO INITIATING FORECLOSURE

25.     On or about March 6, 2013, NDS recorded a Notice of Default and Election to Sell Under Deed of Trust stating that Plaintiffs were behind in their monthly payments.  It stated "by paying all your past due payments, plus permitted costs and expenses."

10

26.     California Civil Code §2923.55 provides that a borrower may designate an attorney to discuss options with the mortgagee, beneficiary, or authorized agent, on the borrower's behalf, to avoid foreclosure. §2923.55(a) states impart:

    (a) (1)     A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not [1] record a notice of default pursuant to §2924 until both of the following:

        (A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision [2](e), et seq.

27.     None of the Defendants, nor their representatives complied with the due diligence requirements to contact Plaintiffs or their legal counsel to discuss their financial condition and the impending foreclosure. Defendants did not comply with any of the requirements under §2923.55 & §2923.55 and therefore the NOD is void. (See Declarations of Marshall & Lydia Sanders, ¶7-12)

28.     California Civil Code §2923.55[13](e) states that [a] notice of default may be recorded pursuant to §2924 when a [15] mortgage servicer has **not** contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. "Due diligence" shall require and mean the following:

    (1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

29.     Defendant's Notice of Default offers no explanation of compliance with the legally required notice requirements under § 2923.55. The purpose of the statutorily required notice under §2923.5 is to require lenders to contact borrowers to discuss foreclosure alternatives and prevent unlawful foreclosure. If Defendants would have contacted Plaintiffs prior to the recording the Notice of

11

1    Default as required by California Law an informal resolution may have been reached, but

2    Defendant's failure to follow California Law has led to this litigation.

3    30.    Since the contact required by Cal. Civ. Code §2923.55 did not occur, the foreclosure is in

4    violation of Cal. Civ. Code §2923.55

5
6    31.    Since the contact required by Cal. Civ. Code §2923.5 did not occur, the foreclosure is in

7    violation of Cal. Civ. Code §2923.5.

8    **IV.    THE DEFENDANTS HAVE FAILED TO COMPLY WITH THE TERMS AND**
9    **CONDITIONS OF THE DEED OF TRUST**

10   32.    Paragraph 24 of the Deed of Trust provides that "Lender, at its option, may from time to time

11   appoint a successor trustee to any Trustee appointed here under by an instrument executed and

12   acknowledged by Lender and recorded in the office of the Recorder of the county in which the

13   property is located... This procedure for substitution of trustee shall govern to the exclusion of all

14
15   other provisions for substitution." (See Complaint Exhibit "A", Paragraph 24)

16   33.    The Deed of Trust identifies Countrywide as the Lender and ReconTrust as Trustee.

17   Countrywide never executed a Substitution of Trustee appointing NDS as a successor trustee.

18   Because the lender and borrower incorporated this requirement into the deed of trust, the parties

19
20   made it a condition precedent to the lender's right to foreclose. (See, e.g., *Pfiefer v. Countrywide*

21   *Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1268-1278, 1281; *Fonteno v. Wells Fargo Bank,*

22   *N.A.*, 228 Cal.App.4th 1358.

23   34.    Throughout the foreclosure process, the mortgage servicer is required to ensure that all

24   documents in support of the foreclosure have been verified for accuracy are complete and are

25   supported by complete and reliable evidence.

26
27
28

12

35.   Defendants have initiated the foreclosure process by recording Notice of Default (See Exhibit "A"), which is being relied upon to initiate the pending foreclosure, makes several statements including by not limited to:

> "That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such deed of trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby."

36.   Plaintiffs allege that NDS in its capacity as the alleged successor Trustee for the Beneficiary which is not even identified in the NOD, did not comply with Cal. Civ. Code §2924.17. Specifically, either Bank of America or Wells Fargo did not deliver to NDS the following: 1) Deed of Trust; and 2) any documents evidencing obligations secured. NDS never verified any of the statements made in the NOD. (See Exhibit "A", attached hereto) Furthermore, NDS as the alleged successor trustee never verified any of the statements in any Notice of Trustee's Sale.

## V.   THE INTENT OF THE HOMEOWNER'S BILL OF RIGHTS

37.   The HBOR was created in part to encourage mortgage servicers to offer loan modifications; the California legislature passed "The California Homeowner Bill of Rights." The law provides in part that, "It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or work out plan if such a plan is consistent with its... authority" *See* Cal. Civ. Code §2923.6(b). The Homeowner Bill of Rights became effective on January 1, 2013. The HBOR also requires lenders to designate a "single point of contact" for borrowers to request foreclosure alternatives and provide the borrower one or more direct means of communicating with that point of contact. The single-point-of-contact provision "is intended to prevent borrowers from being given the

13

run around, being told one thing by one bank employee while something entirely different is being pursued by another" *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal. App. 4th 872, 904-905.

38.     In this case, multiple assignments have occurred between Wells Fargo and Bank of America, but the Notice of Default was recorded by National Default Servicing Corporation as Trustee for Select Portfolio Servicing, Inc. There is no mention of the actual beneficiary in the NOD and it is unclear whether the beneficiary is Bank of America, Wells Fargo or Countrywide. These overcomplicated and unnecessary lending practices are exactly what the Homeowner's Bill of Rights was designed to prevent. Defendants made this matter unnecessarily complicated and violated Cal. Civ. Code § 2923.7 by failing to provide Plaintiffs with a single point of contact.

## VI.   RESCISSION DIVESTS DEFENDANTS' OF ANY INTEREST IN PLAINTIFF'S LOAN

39.     On February 17, 2010, Plaintiffs sent notice to BofA, Wells Fargo, Countrywide and other third parties of Plaintiffs' intention to rescind the loan under 15 U.S.C §1635.  (See Supporting Declarations of Marshall & Lydia Sanders ¶14)

40.     None of the named Defendants nor Countrywide ever contacted Plaintiffs in response to said rescission within the twenty days.  Per 15 U.S.C. §1635(b) their failure to timely respond vests ownership of the property to the Plaintiffs. (See Supporting Declarations of Marshall & Lydia Sanders, ¶17)

41.     Therefore none of the Defendants had the authorization to initiate the non-judicial foreclosure.

## VII.   PLAINTIFF SATISFIES THE REMAINING *WINTER* FACTORS.

42.     Plaintiff has demonstrated the existence of serious questions as to the merits of their claim. An analysis of the remaining *Winter* factors compels the conclusion that the Court should grant their request for a preliminary injunction.

        ///

14

///

## A. Plaintiff Faces Irreparable Injury.

43.    If the preliminary injunction is not granted, Plaintiffs will suffer an irreparable injury by virtue of losing ownership of their home.  It is well established that the loss of a person's home through foreclosure constitutes an immediate, irreparable injury that has no adequate remedy at law. *Sundance Land corp. v. Community First Fed Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988); *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899, 2011 WL 2345036, at *1 (S.D. Cal. June 15, 2007) ("Losing one's home through foreclosure is an irreparable injury.")' *Bland v. Carone Family Trust*, No. 07-CV-418, 207 WL 951344, at *3 (S.D. Cal. Mar. 19, 2007) ("The court finds irreparable harm if plaintiffs' residence is sold prior to determining the merits of plaintiffs' claims.").  Numerous courts have found this injury enough by itself to mandate preliminary injunctive relief. *See, e.g.*, *Nichols v. Deutsche Bank Nat. Trust Co.*, No. 07-CV-2039, 2007 WL 4181111, at *2 (S.D. Cal. Nov. 21, 2007); *United Church of Med. Ctr. V. Med. Ctr. Comm'n*, 689 F. 2d 693, 701 (7th Cir. 1982) ("A piece of property is always considered unique, and its loss is always an irreparable injury."); *Johnson v. U.S. Department of Agriculture*, 734 F. 2d 774, 789 (11th Cir. 1984) ("[I]rreparable injury is suffered when one is wrongfully ejected from his home.  Real property and especially a home is unique").

44.    It is also clear that this harm is an immediate one and not a speculative one.  Defendants have expressly declined to forestall any foreclosure proceedings against Plaintiffs even by the short period of time corresponding to the time period needed to resolve a noticed motion.

## B. The Balance of Hardships Tips Sharply in Plaintiff's Favor.

45.    In order to obtain injunctive relief, a plaintiff must establish that "the balance of equities tips in his favor." *Winter*, 555 U.S. at 20.  The district court "must balance the competing claims of injury

15

and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* At 24 (quoting *Amoco Production co. v. Village of Gabell, Alaska*, 480 U.S. 531, 542 (1987)).

46.    In the instant case, the balance of hardships weighs in Plaintiffs' favor.  If the sale of the Plaintiffs' property proceeds as scheduled, Plaintiffs will lose their home.  In contrast, even if Defendants were ultimately to prevail, a preliminary injunction would only delay the sale of the subject property until after the conclusion of the litigation; they would still retain their security interest in the property.  The fact that Defendants might not recover money until the matter is fully adjudicated "is not enough to outweigh the irreparable injury that the plaintiff would suffer if the foreclosure sale were not enjoined." *Tamburr*, 2011 WL 2654093, at *2 (citing *California Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) (stating that "[t]ypically, monetary harm does not constitute irreparable harm")).  Therefore, the balance of hardships tips sharply in Plaintiffs' favor. *Id.; see also Naderski v. Wells Fargo Bank, N.A.*, No. CV-11-1783, 2011 WL 1627161, at *2 (C.D. Cal. Apr. 25, 2011) (finding that "the balance of hardships tips sharply in plaintiff's favor: if the trustee's sale is not enjoined plaintiff is likely to forever lose her home, whereas defendants will only experience a temporary delay in earing income from the investment.").

**C. A Preliminary Injunction Serves the Public Interest.**

47.    The public interest will certainly be served by the issuance of injunctive relief in this case. This Court has observed, "the adverse impact foreclosures have on households and communities, as well as the societal benefits of home ownership, demonstrate the strong public interest in preventing unlawful foreclosures." *Sharma v. Provident Funding Assoc., LP*, No. C-095968, 2010 WL 143473, at *2 (N.D. Cal. Jan. 8, 2010).

48.    Furthermore, injunctions against foreclosures on homes are in the public interest because the public benefits when lenders are forced to comply with foreclosure statues and citizens are protected

16

from wrongful foreclosures. *Tamburri*, 2011 WL 2654093, at *2 (citing cases). *See also, Sencion v. Saxon Mortg. Services, LLC*, No. 5:10-cv-3108, 2011 WL 1634007, at *3 (N.D. Cal. Apr. 11, 2011) ("[I]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their home."). A non-judicial foreclosure is an extraordinary remedy and those seeking to take advantage of this remedy should be required to follow the law.

## VIII.   PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND.

49.   The Ninth Circuit has recognized that Federal Rule of Civil Procedure 65(c) vests "the district court with discretion as to the amount of security required, if any." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). Indeed, courts may dispense with the filing of a bond altogether "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Joregensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003).

50.   In the instant case, there is no realistic likelihood of harm to Defendants if a bond is not required. Plaintiffs reside at the subject property and they are pursuing this action in the hopes of retaining their ownership and possession of the property. As such, Plaintiffs have every incentive to maintain the subject property. Furthermore, if Plaintiffs are unsuccessful at trial on the merits of this case, Defendants will still be entitled to proceed with the sale of the subject property. The only harm that could come to Defendants if Plaintiffs is unsuccessful at trial would be the minimal cost of rescheduling the foreclosure sale.

51.   Accordingly, no bond should be required upon the issuance of a preliminary injunction in this matter. If required, however, Plaintiff submits that a bond of $1,000.00 would be more than adequate.

///

///

17

1

## CONCLUSION

2

    Given the irreparable harm that Plaintiffs will suffer if they are not granted immediate relief,
this Court should issue the requested temporary restraining order and preliminary injunction

3

enjoining the Defendants, and anyone acting in concert with them to foreclose or "push" Plaintiffs
out in order that they might then occupy Plaintiffs,' home, going in illegally claiming justification

4

under principles of abandonment, from foreclosing on the "loan" or auctioning off Plaintiffs home, in
violation of the United States Constitution (supplanting California's non-judicial foreclosure scheme

5

which works an involuntary forfeiture) which prohibits forfeitures and seizures without Due Process
under the Fifth Amendment, made applicable to the States under the Fourteenth Amendment,

6

preempting State rights to codify "another" scheme to supplant the Federal government. No state can
strip away rights that the U.S. Constitution provides for the protection of all Citizens. California does

7

not get a free pass to pounce on Constitutionally guaranteed rights, no matter what California
legislature or then-current California governor or courts say or do to the contrary.

8

DATED: September 13, 2015

9

10

11

12

                               Marshall S. Sanders, Trustee
                               *In Pro Per*

13

14

15

                               Lydia O. Sanders, Trustee
                               *In Pro Per*

16

17

18

19

20

21

22

23

24

25

26

27

28